# EXHIBIT K

FILED: NASSAU COUNTY CLERK 06/28/2021 05:18 PM    INDEX NO. 608157/2021
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 06/28/2021

Case 8:24-ap-01011-SC    Doc 1-11    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
                 Exhibit Exhibit K - Bridge Lawsuit    Page 2 of 19

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| BRIDGE FUNDING CAP LLC<br><br>                             Plaintiff<br><br>         -against-<br><br>BAT, INC D/B/A COAST PROCESSING ; THE LITIGATION PRACTICE GROUP PC; VULCAN CONSULTING GROUP LLC; B.A.T. INC. DBA COAST PROCESSING; COAST PROCESSING and DANIEL S MARCH and TONY M DIAB<br><br>                             Defendants | Index No.:<br><br>Date Purchased<br><br>**SUMMONS**<br><br>Plaintiff address is<br>5308 13th Ave Suite 324<br>Brooklyn, New York 11219 |

TO THE ABOVE NAMED DEFENDANTS:

**YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff attorney, at the address stated below, an answer to the attached complaint. If this summons was personally delivered upon you in the State of New York, the answer must be served within twenty days after such service of the summons, excluding the date of service. If the summons was not personally delivered to you within the State of New York, the answer must be served within thirty days after service of the summons is complete as provided by law.

If you do not serve an answer to the attached complaint within the applicable time limitation stated above, a judgment may be entered against you, by default, for the relief demanded in the complaint, without further notice to you.

The basis for venue is pursuant to the Contract entered into between the parties.

Dated:    New York, New York
          June 28, 2021

                                                            *Ariel Bouskila*
                                                    _____
                                                          Ariel Bouskila, Esq.
                                                      Berkovitch & Bouskila, PLLC
                                                         *Attorneys for Plaintiff*
                                                         80 Broad St Suite 3303
                                                        New York, New York 10004
                                                         Phone:(212)729-1477
                                                          Fax:(347)342-3192

**Defendants to be served:**
BAT, INC D/B/A COAST PROCESSING;
17542 17th St. Ste 100
Tustin, CA 92780

DANIEL S MARCH
20160 Nob Hill Dr
Yorba Linda, CA 92886

THE LITIGATION PRACTICE GROUP
PC; VULCAN CONSULTING GROUP
LLC; B.A.T. INC. DBA COAST
PROCESSING; COAST PROCESSING
1351 Callie Avanzado Ste 2
San Clemente, CA 92673

AND:
TONY M DIAB 20160 Nob
Hill Dr Yorba Linda, CA
92886

FILED: NASSAU COUNTY CLERK 06/28/2021 05:18 PM
NYSCEF DOC. NO. 1
Case 8:24-ap-01011-SC    Doc 1-11    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
Exhibit Exhibit K - Bridge Lawsuit    Page 3 of 19
INDEX NO. 608157/2021
RECEIVED NYSCEF: 06/28/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

BRIDGE FUNDING CAP LLC

                           Plaintiff,

-against-

BAT, INC D/B/A COAST PROCESSING   THE LITIGATION PRACTICE GROUP PC; VULCAN CONSULTING GROUP LLC; B.A.T. INC. DBA COAST PROCESSING; COAST PROCESSING«IF» and
DANIEL S MARCH  and TONY M DIAB

                           Defendants

Index No.:

**VERIFIED COMPLAINT**

Plaintiff BRIDGE FUNDING CAP LLC ("Plaintiff"), by its attorney, Ariel Bouskila Esq., for its complaint herein against BAT, INC D/B/A COAST PROCESSING   THE LITIGATION PRACTICE GROUP PC; VULCAN CONSULTING GROUP LLC; B.A.T. INC. DBA COAST PROCESSING; COAST PROCESSING (referred to collectively as "Company Defendant") and DANIEL S MARCH and TONY M DIAB ("Guarantor") (Company Defendant and Guarantor collectively "Defendants"), alleges as follows:

## The Parties

1. At all relevant times, Plaintiff was and is an entity authorized to do business in the State of New York.

2. Upon information and belief, at all relevant times, Company Defendant was and is a company organized and existing under the laws of the State of CA.

3. Upon information and belief, at all relevant times, Guarantor 1 and Guarantor 2 were and are a individuals residing in the State of CA.

## The Facts

FILED: NASSAU COUNTY CLERK 06/28/2021 05:18 PM                    INDEX NO. 608157/2021
NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 06/28/2021

Case 8:24-ap-01011-SC    Doc 1-11    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
                         Exhibit Exhibit K - Bridge Lawsuit    Page 4 of 19

4. On or about May 27, 2021, Plaintiff and Defendants entered into a Purchase and Sale of Future Receivables agreement (the "Agreement") whereby Plaintiff agreed to purchase all rights to Company Defendant's future receivables having an agreed upon value of $1,799,100.00. A copy of the agreement is annexed hereto as Exhibit A.

5. Pursuant to the Agreement, Company Defendant agreed to have one bank account approved by Plaintiff (the "Bank Account") from which Company Defendant authorized Plaintiff to make daily ACH withdrawals until $1,799,100.00 was fully paid to Plaintiff.

6. In addition, Guarantor 1 and Guarantor 2 agreed to guarantee any and all amounts owed to Plaintiff from Company Defendant upon a breach in performance by Company Defendant.

7. Plaintiff remitted the Purchase Price for the future receivables to Company Defendant as agreed. Initially, Company Defendant met its obligations under the Agreement.

8. Company Defendant ceased remitting to Plaintiff the Plaintiff's share of Purchased Receivables and otherwise breached the Agreement by intentionally impeding and preventing Plaintiff from making the agreed upon ACH withdrawals from the Bank Account while conducting regular business operations and collecting revenue.

9. Company Defendant made payments totaling $1,050,000.00 leaving a balance of $749,100.00. In addition, pursuant to the Agreement, Company Defendant incurred NSF fees in the amount of $140.00, a default fee in the amount of $90,000.00, and an attorney's fee in the amount of $10,000.00.

10. Despite due demand, Company Defendant has failed to remit the purchased amount due and owing by Company Defendant to Plaintiff under the Agreement.

11. Additionally, Guarantor 1 and Guarantor 2 are responsible for all amounts incurred as a result of any breach of the Company Defendant.

12. There remains a balance due and owing to Plaintiff on the Agreement in the amount of $849,240.00 plus interest, costs, disbursements and attorney's fees.

## AS AND FOR THE FIRST CAUSE OF ACTION
### (Breach of Contract)

13. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 12 of this complaint as though fully set forth at length herein.

14. Plaintiff gave fair consideration to Company Defendant which was tendered for the right to receive the aforementioned receivables. Accordingly, Plaintiff fully performed under the Agreement.

15. Upon information and belief, Company Defendant is still conducting regular business operations and still collecting receivables.

16. Company Defendant has materially breached the Agreement by failing to remit to Plaintiff the Plaintiffs share of Future Receivables, as required under the Agreement and otherwise intentionally impeding and preventing Plaintiff from receiving the proceeds of the receivables purchased by them.

17. Upon information and belief, Company Defendant has also materially breached the Agreement by using more than one depositing bank account which has not been approved by Plaintiff.

18. By reason of the foregoing, Plaintiff has suffered damages in the amount of $849,240.00, plus interest, costs, disbursements and attorney's fees.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Personal Guarantors)

19. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 18 of this complaint as though fully set forth at length herein.

FILED: NASSAU COUNTY CLERK 06/28/2021 05:18 PM
NYSCEF DOC. NO. 1
INDEX NO. 608157/2021
RECEIVED NYSCEF: 06/28/2021

Case 8:24-ap-01011-SC    Doc 1-11    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
Exhibit Exhibit K - Bridge Lawsuit    Page 6 of 19

20. Pursuant to the Agreement, Guarantor 1 and Guarantor 2 personally guaranteed that Company Defendant would perform its obligations thereunder and that they would be personally liable for any loss suffered by Plaintiff as a result of a breach by Company Defendant.

21. Company Defendant has breached the Agreement as detailed above.

22. By reason of the foregoing, Plaintiff is entitled to judgment against Guarantor 1 and Guarantor 2 based on their personal guarantee in the sum of $849,240.00, plus interest, costs, disbursements and attorney's fees.

[THIS SPACE WAS LEFT BLANK INTENTIONALLY]

FILED: NASSAU COUNTY CLERK 06/28/2021 05:18 PM
NYSCEF DOC. NO. 1
INDEX NO. 608157/2021
RECEIVED NYSCEF: 06/28/2021

Case 8:24-ap-01011-SC    Doc 1-11    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
Exhibit Exhibit K - Bridge Lawsuit    Page 7 of 19

**WHEREFORE**, plaintiff BRIDGE FUNDING CAP LLC requests judgment against defendants BAT, INC D/B/A COAST PROCESSING THE LITIGATION PRACTICE GROUP PC; VULCAN CONSULTING GROUP LLC; B.A.T. INC. DBA COAST PROCESSING; COAST PROCESSING and TONY M DIAB and DANIEL S MARCH as follows:

(i) On the first cause of action of the complaint, Plaintiff requests judgment against Company Defendant in the amount of $849,240.00, plus interest, costs, disbursements and attorney's fees;

(ii) On the second cause of action of the complaint, Plaintiffs request judgment against Guarantor 1 and Guarantor 2 in the amount of $849,240.00, plus interest, costs, disbursements and attorney's fees;

(iv) For such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         June 28, 2021

*Ariel Bouskila*
Ariel Bouskila, Esq.
Berkovitch & Bouskila, PLLC
*Attorneys for Plaintiff*
80 Broad St Suite 3303
New York, New York 10004
Phone:(212)729-1477
Fax:(347)342-3192

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

BRIDGE FUNDING CAP LLC

                                Plaintiff,

-against-

BAT, INC D/B/A COAST PROCESSING   THE LITIGATION PRACTICE GROUP PC; VULCAN CONSULTING GROUP LLC; B.A.T. INC. DBA COAST PROCESSING; COAST PROCESSING«IF» and
DANIEL S MARCH  and TONY M DIAB

                                Defendants

Index No.:

NOTICE OF COMMENCEMENT OF ACTION
SUBJECT TO MANDATORY ELECTRONIC FILING

     PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b) (3) of that Section.

     The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF.  Failure to do so may result in an inability to receive electronic notice of document filings.

     Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing. For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile  or contact the NYSCEF Resource Center at 646-386-3033 or efile@courts.state.ny.us.

Dated:   June 28, 2021

                                                                       *Ariel Bouskila*
                                                                     Ariel Bouskila, Esq.
                                                                  Berkovitch & Bouskila, PLLC
                                                                *Attorneys for Plaintiff*
                                                                 80 Broad St Suite 3303
                                                          New York, New York 10004
                                                            Phone:(212)729-1477
                                                                 Fax:(347)342-3192

FILED: NASSAU COUNTY CLERK 06/28/2021 05:18 PM
NYSCEF DOC. NO. 1
INDEX NO. 608157/2021
RECEIVED NYSCEF: 06/28/2021

Case 8:24-ap-01011-SC    Doc 1-11    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
Exhibit Exhibit K - Bridge Lawsuit    Page 9 of 19

STATE OF NEW YORK            )
COUNTY OF NEW YORK           )  ss.:

YITZCHOK WOLF, being duly sworn, states:

I am an authorized representative of Plaintiff BRIDGE FUNDING CAP LLC in the within action. I have read the foregoing Verified Complaint and know the contents thereof; the same is true to my knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

The foregoing statements are true under penalties of perjury.

By:_____

YITZCHOK WOLF,

Sworn to before me this

June 28, 2021.

_____

Notary Public

Ariel Bouskila
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02BO6334934
Qualified in Rockland County
Commission Expires Dec. 28, 2023

# PURCHASE AND SALE OF FUTURE RECEIVABLES



Agreement dated __05/27/2021__ between Bridge Funding Cap LLC, ("BFC") the Merchant(s) listed below ("Merchant")

## MERCHANT INFORMATION

Merchant's Legal Name: **BAT, INC. and the entities listed on annexed "Exhibit A"**

D/B/A: **COAST PROCESSING**   State of Incorporation / Organization: **CA**

Type of Entity: 

Physical Address: **17542 17TH ST. STE 100**

City: **TUSTIN**   State: **CA**   Zip: **92780**   Business Phone: 

Contact(s) Name: **DANIEL S. MARCH**   Cellphone Number:    Email: 

Mailing Address: **20160 NOB HILL DR**   City: **YORBA LINDA**   State: **CA**   Zip: **92886**

Purchase Price: $ **900,000.00**   Purchased Percent **45**   % Purchased Amount: $ **1,799,100.00**

Payment Frequency: **DAILY**   Remittance $ **70,000.00**

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to BFC (making BFC the absolute owner) in consideration of the "Purchase Price" specified above, the Purchased Percentage of all of Merchant's Future Receipts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the " Future Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment deposited into Merchants Bank Account), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the "Purchased Amount has been delivered by or on behalf of Merchant to BFC

Merchant is selling a portion of a future revenue stream to BFC at a discount, not borrowing money from BFC, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by BFC. The Remittance is a good faith estimate of Purchased Percentage multiplied by revenues of Merchant. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. BFC is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and BFC assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give BFC a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5.

BFC will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, BFC (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as BFC receives payment in full of the Purchased Amount. Merchant hereby authorizes BFC to ACH debit the initial Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. BFC's payment of the Purchase Price shall be deemed the acceptance and performance by BFC of this Agreement. Merchant understands that it is responsible for ensuring that the initial Remittance to be debited by BFC remains in the Account and will be held responsible for any fees incurred by BFC resulting from a rejected ACH attempt or an Event of Default. BFC is not responsible for any overdrafts or rejected transactions that may result from BFC's ACH debiting the Agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between BFC and Merchant, upon the occurrence of an Event of Default of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

FOR THE MERCHANT (#1) By: **DANIEL S. MARCH**       *Daniel S March*
                          (Print Name and Title)                    (Signature)

FOR THE MERCHANT (#2) By: **TONY M. DIAB**          *Tony M Diab*
                          (Print Name and Title)                    (Signature)

BY OWNER (#2) By: **DANIEL S. MARCH**              *Daniel S March*
                  (Print Name and Title)                            (Signature)

BY OWNER (#2) By: **TONY M. DIAB**                  *Tony M Diab*
                  (Print Name and Title)                            (Signature)

Page 1                                                    Initial: *DM*

Doc ID: 3fc83647e03378b252c05d038cff7a2f85d71795

FILED: NASSAU COUNTY CLERK 06/28/2021 05:18 PM  INDEX NO. 608157/2021
NYSCEF DOC. NO. 5                                                                                              RECEIVED NYSCEF: 06/28/2021

Case 8:24-ap-01011-SC    Doc 1-11    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
                  Exhibit Exhibit K - Bridge Lawsuit    Page 11 of 19

# MERCHANT AGREEMENT TERMS AND CONDITIONS

## 1 TERMS OF ENROLLMENT IN PROGRAM

**1.1 Merchant Deposit Agreement and Processor.**

Merchant shall (A) execute an agreement acceptable to BFC with a Bank acceptable to BFC to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to BFC with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide BFC and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes BFC and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to BFC for the receipts as specified herein and to pay such amounts to BFC. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre- approved by BFC or not. This additional authorization is not a waiver of BFC's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which BFC did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of BFC.

**1.2 Term of Agreement.**

This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by BFC as per the terms of this Agreement.

**1.3 Future Purchase of Increments.**

Subject to the terms of this Agreement, BFC offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. BFC reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion.

**1.4 Reconciliation.**

As long as an Event of Default, or breach of this Agreement, has not occurred, once per calendar month Merchant may request a retroactive reconciliation of the total Remittance Amount(for the purposes of this Agreement "total Remittance Amount" shall be defined as all payments made by Merchant to BFC after BFC remitted the Purchase Price to Merchant). All requests hereunder must be in writing to reconciliations@bridgefundingcap.com within five (5) business days of the close of the calendar month. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report if applicable, for the requested month. BFC retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and BFC shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by BFC within five (5) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by BFC shall equal the Specific Percentage of the Future Receipts that Merchant Collected from the date of this Agreement up to and including the date of the Reconciliation request. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with BFC's right and ability to debit Merchant's Account while the Request is pending or to unilaterally modify the initial Remittance amount, in any method other than the ones listed in this Agreement.

**1.5 Adjustments to the Remittance.**

As long an Event of Default, or breach of this Agreement, has not occurred and should the Merchant experience a decrease in its' Future Receipts, Merchant may give notice to BFC to request a decrease in the Remittance. All requests hereunder must be in writing to reconciliations@bridgefundingcap.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable reports for the requested period. BFC retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and BFC shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks or by other means that can more accurately estimate the Merchant's Future Receipts. Merchant shall provide BFC with viewing access to their bank account as well as all information reasonably requested by BFC to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

**1.6 Financial Condition.**

Merchant and Guarantor(s) (as hereinafter defined and limited) authorize BFC and its agents to investigate their financial responsibility and history, and will provide to BFC any authorizations, bank or financial statements, tax returns, etc., as BFC deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. BFC is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.7 Transactional History.**

Merchant authorizes all of its banks, brokers and processor to provide BFC with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide BFC with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from BFC.

**1.8 Indemnification.**

Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by BFC for monies owed to BFC from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by BFC.

**1.9 No Liability.**

In no event will BFC be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of BFC's attorney's fees and expenses resulting therefrom.

**1.10 Reliance on Terms.**

Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, BFC, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

**1.11 Sale of Receipts.**

Merchant and BFC agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not

FILED: NASSAU COUNTY CLERK 06/28/2021 05:18 PM   INDEX NO. 608157/2021
NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 06/28/2021

Case 8:24-ap-01011-SC    Doc 1-11    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
                 Exhibit Exhibit K - Bridge Lawsuit    Page 12 of 19

intended to be, nor shall it be construed as a loan from BFC to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. BFC has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to BFC in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that BFC has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and BFC shall promptly refund to Merchant any interest received by BFC in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that BFC not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

**1.12    Power of Attorney.**

Merchant irrevocably appoints BFC as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to BFC from Processor, or in the case of a violation by Merchant of Section 1or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to BFC; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which BFC may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by merchant.

**1.13    Protections Against Default.**

The following Protections 1 through 8 may be invoked by BFC immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the BFC electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to BFC; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of BFC, and (ii) the written agreement of any BFC or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to BFC; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; (f) Merchant fails to provide BFC with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from BFC, or (g) Merchant breaches any terms of this Agreement, including but not limited any of the Events of Default contained in Section 3.1 herein. These protections are in addition to any other remedies available to BFC at law, in equity or otherwise pursuant to this Agreement.

**Protection 1.** The full uncollected Purchased Amount plus all fees (including reasonable attorney's fees) due under this Agreement and the attached Security Agreement become due and payable in full immediately.
**Protection 2.** BFC may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).
**Protection 3.** Merchant hereby authorizes BFC to execute in the name of the Merchant a Confession of Judgment in favor of BFC in the amount of Purchased Amount stated in the Agreement. Upon an Event of Default, BFC may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon.
**Protection 4.** BFC may enforce its security interest in the Collateral.
**Protection 5.** The entire Purchased Amount and all fee (including reasonable attorney's fees) shall become immediately payable to BFC from Merchant.
**Protection 6.** BFC may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if BFC recovers a Judgment against Merchant, Merchant shall be liable for all of BFC's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs. **Protection 7.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to BFC. Upon breach of any provision in this Agreement, BFC may exercise its rights under this Assignment of Lease without prior Notice to Merchant. Protection 8. BFC may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to BFC.

**1.14    Protection of Information.**

Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes BFC to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that BFC obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against BFC or any of its affiliates relating to any (i)investigation undertaken by or on behalf of BFC as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.15    Confidentiality.**

Merchant understands and agrees that the terms and conditions of the products and services offered by BFC, including this Agreement and any other BFC documents (collectively, "Confidential Information") are proprietary and confidential information of BFC. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of BFC to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles BFC to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

**1.16    Publicity**.

Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes BFC to use its, his or her name in listings of clients and in advertising and marketing materials.

**1.17    D/B/A's.**

Merchant hereby acknowledges and agrees that BFC may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between BFC and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

Page 3                                                                    Initial: _DM_

## 2 REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

**2.1 Financial Condition and Financial Information.**

Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to BFC, and future statements which will be furnished hereafter at the discretion of BFC, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise BFC of any material adverse change in their financial condition, operation or ownership. BFC may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to BFC within five business days after request from BFC. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

**2.2 Governmental Approvals.**

Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**2.3 Authorization.**

Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Use of Funds.**

Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

**2.5 Electronic Check Processing Agreement.**

Merchant will not change its Processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without BFC's prior written consent. Any such changes shall be a material breach of this Agreement.

**2.6 Change of Name or Location.**

Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and BFC, nor shall Merchant change any of its places of business without prior written consent by BFC.

**2.7 Daily Batch Out.**

Merchant will batch out receipts with the Processor on a daily basis if applicable.

**2.8 Estoppel Certificate.**

Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from BFC to Merchant, execute, acknowledge and deliver to BFC and/or to any other person, firm or corporation specified by BFC, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9 No Bankruptcy.**

As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10 Unencumbered Receipts**.

Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of BFC.

**2.11 Business Purpose.**

Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.12 Defaults under Other Contracts.**

Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

**2.13 Good Faith.**

Merchant and Guarantors hereby affirm that Merchant is receiving the Purchase Price and selling BFC the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business.

## 3 EVENTS OF DEFAULT AND REMEDIES

**3.1 Events of Default.**

The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a) Merchant or Guarantor shall violate any term or covenant in this Agreement;
(b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;
(c) the sending of notice of termination by Merchant or verbally notifying BFC of its intent to breach this Agreement;
(d) the Merchant fails to give BFC 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored by Merchant's bank, and the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;
(f) Merchant shall transfer or sell all or substantially all of its assets;
(g) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;
(h) Merchant shall use multiple depository accounts without the prior written consent of BFC
(i) Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party.
(j) Merchant shall change its depositing account without the prior written consent of BFC; or

Page 4                                                                   Initial: *DM*

FILED: NASSAU COUNTY CLERK 06/28/2021 05:18 PM                                                    INDEX NO. 608157/2021
NYSCEF DOC. NO. 5                                                                                 RECEIVED NYSCEF: 06/28/2021

Case 8:24-ap-01011-SC    Doc 1-11    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
                  Exhibit Exhibit K - Bridge Lawsuit    Page 14 of 19

(k) Merchant shall close its depositing account used for ACH debits without the prior written consent of BFC.
(l) Merchant's bank returns a code other than NSF cutting BFC from its collections
(m) Merchant shall default under any of the terms, covenants and conditions of any other agreement with BFC.

### 3.2 Limited Personal Guaranty

In the Event of a Default, BFC will enforce its rights against the Guarantors of this transaction. Said Guarantors will be jointly and severally liable to BFC for all of BFC's losses and damages, in additional to all costs and expenses and legal fees associated with such enforcement.

### 3.3 Remedies.

In case any Event of Default occurs and is not waived pursuant to Section 4.4. hereof, BFC may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing the Confession of Judgment and executing thereon, and enforcing the Security Agreement contained herein. All rights, powers and remedies of BFC in connection with this Agreement may be exercised at any time by BFC after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

### 3.4 Costs.

Merchant shall pay to BFC all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of BFC's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

### 3.5 Required Notifications.

Merchant is required to give BFC written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give BFC seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## 4 MISCELLANEOUS

### 4.1 Modifications; Agreements.

No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by BFC.

### 4.2 Assignment.

BFC may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

### 4.3 Notices.

All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to BFC shall become effective only upon receipt by BFC. Notices to Merchant shall become effective three days after mailing.

### 4.4 Waiver Remedies.

No failure on the part of BFC to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

### 4.5 Binding Effect;

Governing Law, Venue and Jurisdiction. This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted in any court sitting in New York, Texas or Connecticut, and shall be the sole and exclusive venues for any lawsuit, action or proceeding (the "Acceptable Forums"). The parties agree that the said sole and exclusive Acceptable Forums are convenient and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to inconvenience of the jurisdiction or venue. Should a proceeding be initiated in any other forum, each of the parties to this Agreement irrevocably waives any right to oppose any motion or application made by any other party to transfer such proceeding to an Acceptable Forum. **Merchant and Guarantor hereby agree that the mailing of any Summons and Complaint in any proceeding commenced by BFC by certified or registered mail, return receipt requested to the Mailing Address listed on this Agreement, or via email to the Email Address listed on this Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.**

### 4.6 Survival of Representation,

etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

### 4.7 Interpretation.

All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

### 4.8 Severability.

In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

### 4.9 Entire Agreement.

Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and BFC and supersede all prior agreements and understandings relating to the subject matter hereof.

### 4.10 JURY TRIAL WAIVER.

THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING INCONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THEENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

### 4.11 CLASS ACTION WAIVER.

THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR

FILED: NASSAU COUNTY CLERK 06/28/2021 05:18 PM
NYSCEF DOC. NO. 5
INDEX NO. 608157/2021
RECEIVED NYSCEF: 06/28/2021
Case 8:24-ap-01011-SC    Doc 1-11    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
Exhibit Exhibit K - Bridge Lawsuit    Page 15 of 19

REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**4.12 Facsimile & Digital Acceptance.**
Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

**4.13 Prejudgment Remedy Waiver.**
EACH AND EVERY MERCHANT, ENDORSER, GUARANTOR AND SURETY OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY MERCHANT, ENDORSER AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH FCG HEREOF MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENTAND (B) ALL RIGHTS TO REQUEST THAT FCG HEREOF POST A BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID MERCHANTS, ENDORSER OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY THE HOLDER HEREOF BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENT.

FILED: NASSAU COUNTY CLERK 06/28/2021 05:18 PM
NYSCEF DOC. NO. 5
INDEX NO. 608157/2021
RECEIVED NYSCEF: 06/28/2021

Case 8:24-ap-01011-SC    Doc 1-11    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
Exhibit Exhibit K - Bridge Lawsuit    Page 16 of 19

# SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: **BAT, INC. and the entities listed on annexed "Exhibit A"**

D/B/A: **COAST PROCESSING**    Federal ID#: ████

Physical Address: **17542 17TH ST. STE 100**    City: **TUSTIN**    State: **CA**    Zip: **92780**

Additional Guarantor(s):

## SECURITY AGREEMENT

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to BFC a security interest in and lien upon all of their present and future: (a) accounts (the "Accounts Collateral"), chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to BFC under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Collateral"). Merchant agrees to provide other security to BFC upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover BFC's entitlements under this Agreement, BFC is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Collateral. These security interests and liens will secure all of BFC's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, BFC or an affiliate of BFC. BFC is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by BFC without notice or demand of any kind by making an immediate withdrawal or freezing the Collateral. BFC shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, BFC has control over and may direct the disposition of the Collateral, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Collateral.

With respect to such security interests and liens, BFC will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from BFC written consent prior to granting a security interest of any kind in the Collateral to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and BFC is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Collateral. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by BFC. Merchant and Guarantor(s) agree(s) to execute and deliver to BFC such instruments and documents BFC may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. BFC is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to BFC under any other agreement between Merchant or Guarantor(s) and BFC (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as BFC deems necessary to perfect or maintain BFC's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes BFC to file any financing statements deemed necessary by BFC to perfect or maintain BFC's security interest. Merchant and Guarantor(s) shall be liable for, and BFC may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by BFC in protecting, preserving and enforcing BFC's security interest and rights.

**Negative Pledge.** Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** BFC shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, BFC may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that BFC may enter into an agreement with Merchant's landlord giving BFC the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, BFC may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to BFC, whether by acceleration or otherwise.

## GUARANTY OF PERFORMANCE

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

BFC As an additional inducement for BFC to enter into this Agreement, the undersigned Guarantor(s) hereby provides BFC with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to BFC in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations").Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

Page 7    Initial: *DM*

Doc ID: 3fc83647e03378b252c05d038cff7a2f85d71795

FILED: NASSAU COUNTY CLERK 06/28/2021 05:18 PM        INDEX NO. 608157/2021
NYSCEF DOC. NO. 5                                       RECEIVED NYSCEF: 06/28/2021

Case 8:24-ap-01011-SC    Doc 1-11    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
                    Exhibit Exhibit K - Bridge Lawsuit    Page 17 of 19

**Guarantor Waivers.** In the event of a breach of the above, BFC may seek recovery from Guarantors for all of BFC's losses and damages by enforcement of BFC's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral BFC may hold pursuant to this Agreement or any other guaranty.

BFC does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of:

(i)  Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) BFC's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to BFC. In addition, BFC may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to BFC; (ii) release Merchant from its obligations to BFC; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to BFC under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that BFC must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

Guarantor Acknowledgement. Guarantor acknowledges that: (i) He/She is bound by the Prejudgment Remedy Waiver and Class Action Waiver provisions in the Merchant Agreement Terms and Conditions, as well as all other terms and conditions therein, which are incorporated herein by reference; (ii) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

FOR THE MERCHANT (#1) By: __DANIEL S. MARCH_____     _Daniel S March_____
                           (Print Name and Title)                      (Signature)

_____                                   _____
(Social security number)                                     (Driver's License Number)

FOR THE MERCHANT (#2) By: __TONY M. DIAB_____     _Tony M Diab_____
                           (Print Name and Title)                      (Signature)

_____                                   _____
(Social security number)                                     (Driver's License Number)

BY OWNER (#1) By: __DANIEL S. MARCH_____     _Daniel S March_____
                  (Print Name and Title)                               (Signature)

_____                                   _____
(Social security number)                                     (Driver's License Number)

BY OWNER (#2) By: __TONY M. DIAB_____     _Tony M Diab_____
                  (Print Name and Title)                               (Signature)

_____                                   _____
(Social security number)                                     (Driver's License Number)

FOR THE GUARANTOR(S) By: _____     _____
                          (Print Name and Title)                       (Signature)

_____                                   _____
(Social security number)                                     (Driver's License Number)

FOR THE GUARANTOR(S) By: _____     _____
                          (Print Name and Title)                       (Signature)

_____                                   _____
(Social security number)                                     (Driver's License Number)

Page 8                                                       Initial: _DM_

FILED: NASSAU COUNTY CLERK 06/28/2021 05:18 PM
NYSCEF DOC. NO. 5
INDEX NO. 608157/2021
RECEIVED NYSCEF: 06/28/2021

Case 8:24-ap-01011-SC    Doc 1-11    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
Exhibit Exhibit K - Bridge Lawsuit    Page 18 of 19

# APPENDIX A - THE FEE STRUCTURE:

A. **Underwriting Fee** Minimum of $500.00 or up to 12% of the purchase price for underwriting and related expenses.

B. **Origination Fee** Minimum of $500.00 or up to 10% of the purchase price to cover cost of Origination and ACH Setup

C. **NSF Fee (Standard)** $35.00 (each)

D. **Rejected ACH / Blocked ACH / Default Fee** $5,000.00 When Merchant BLOCKS Account from our Debit ACH, or when Merchant directs the bank to reject our Debit ACH, which places them in default (per contract). When Merchant changes bank Account cutting us off from our collections.

E. **Bank Change Fee** $50.00 When Merchant requires a change of Bank Account to be Debited, requiring us to adjust our system.

F. **Wire Fee** – Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH.

G. **Attorney's Fee:** $10,000. When merchant breaches any term of this Agreement and BFC is required to retain counsel to enforce, defend or collect any term of this Agreement.

H. **Unauthorized Account Fee:** $5,000.00 (if a merchant blocks BFC'S ACH debit of the Account, bounces more than 2 debits of the Account, or simultaneously uses multiple bank accounts or credit– card processors to process its receipts).

I. **Default Fee:** $5,000.00 or up to 10% of the funded amount (if a merchant changes bank accounts or switches to another credit card processor without BFC's consent, or commits another default pursuant to the Agreement) or bounces more than 2 debits of the Account.

J. **Stacking Fee:** If the Merchant takes any further financing from any other finance /factoring company a fee of 10% of the purchased amount will be added to the Merchants current balance.

K. **Risk Assessment Fee:** $249.00

L. **UCC Fee:** $195.00

M. **Management Fee:** $299 monthly funding fee for duration of agreement terms or until balance paid.

FOR THE MERCHANT (#1) By: DANIEL S. MARCH  
(Print Name and Title)

*Daniel S March*  
(Signature)

FOR THE MERCHANT (#2) By: TONY M. DIAB  
(Print Name and Title)

*Tony M Diab*  
(Signature)

Page 9

Initial: *DM*

Doc ID: 3fc83647e03378b252c05d038cff7a2f85d71795

# EXHIBIT A

LIST OF ADDITIONAL PARTIES IN WHOSE ASSETS SELLER HAS GRANTED BUYER A BLANKET SECURITY INTEREST:

THE LITIGATION PRACTICE GROUP PC
VULCAN CONSULTING GROUP LLC
EIN:85-4067431
B.A.T. INC. DBA COAST PROCESSING
COAST PROCESSING
1351 CALLE AVANZADO STE 2 SAN CLEMENTE CA 92673
EIN:82-3967686

Buyer may file a UCC-1 financing statement with the Secretary of State, reflecting a blanket security interest in the assets of the above-listed entities.

DATED: 05/27/2021

By: *Daniel S March*

DANIEL S. MARCH

Doc ID: 3fc83647e03378b252c05d038cff7a2f85d71795