# EXHIBIT N

# PURCHASE & SALE OF FUTURE RECEIVABLES

**FUNDURA CAPITAL**

This Revenue Purchase Agreement and Security Agreement and Guaranty of Performance ("Agreement") dated 07/22/2021 between Fundura Capital Group, ("**FCG**") the Merchant(s) listed below (**Merchant**") and the Individual(s) listed below ("**Guarantor**")

## Merchant Information

Merchant's Legal Name: **BAT, INC. and the entities listed on annexed "Exhibit A"**
D/B/A: **COAST PROCESSING**     State of Incorporation / Organization: **CA**
Type of Entity: ___
Physical Address: **17542 17TH ST. STE 100**
City: **TUSTIN**    State: **CA**    Zip: **92780**    Business Phone: ___
Guarantor(s) Name: **DANIEL S. MARCH**    Cellphone Number: ___    Email Address: ___
Mailing Address: **20160 NOB HILL DR.**    City: **YORBA LINDA**    State: **CA**    Zip: **92886**

Purchase Price: $ **1,200,000.00**    Purchased Percent: **50** %    Purchased Amount: $ **1,986,000.00**
Payment Frequency: **DAILY**    Remittance: $ **35,000.00**

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to FCG (making FCG the absolute owner) in consideration of the "Purchase Price" specified above, the Purchased Percentage of all of Merchant's Future Receipts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Future Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment deposited into Merchants Bank Account), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the "Purchased Amount has been delivered by or on behalf of Merchant to FCG

Merchant is selling a portion of a future revenue stream to FCG at a discount, not borrowing money from FCG, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by FCG. The Remittance is a good faith estimate of Purchased Percentage multiplied by revenues of Merchant. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. FCG is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and FCG assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give FCG a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5.

FCG will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, FCG (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as FCG receives payment in full of the Purchased Amount. Merchant hereby authorizes FCG to ACH debit the initial Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. FCG's payment of the Purchase Price shall be deemed the acceptance and performance by FCG of this Agreement. Merchant understands that it is responsible for ensuring that the initial Remittance to be debited by FCG remains in the Account and will be held responsible for any fees incurred by FCG resulting from a rejected ACH attempt or an Event of Default. FCG is not responsible for any overdrafts or rejected transactions that may result from FCG's ACH debiting the Agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between FCG and Merchant, upon the occurrence of an Event of Default of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.

FOR THE MERCHANT (#1) By: **DANIEL S. MARCH**    *Daniel S March* (Signature)
(Print Name and Title)
FOR THE MERCHANT (#2) By: **TONY M. DIAB**    *Tony M Diab* (Signature)
(Print Name and Title)
BY OWNER (#1) By: **DANIEL S. MARCH**    *Daniel S March* (Signature)
(Print Name and Title)
BY OWNER (#2) By: **TONY M. DIAB**    *Tony M Diab* (Signature)
(Print Name and Title)

1 | Page

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1

FILED: NASSAU COUNTY CLERK 02/23/2022 08:42 PM
NYSCEF DOC. NO. 51
INDEX NO. 613192/2021
RECEIVED NYSCEF: 02/23/2022

Case 8:24-ap-01011-SC    Doc 1-14    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
Exhibit Exhibit N - July 22nd Agreement    Page 3 of 15

**PURCHASE & SALE OF FUTURE RECEIVABLES**

**FUNDURA CAPITAL**

This Revenue Purchase Agreement and Security Agreement and Guaranty of Performance ("Agreement") dated 07/22/2021 between Fundura Capital Group, ("FCG") the Merchant(s) listed below (**Merchant**) and the Individual(s) listed below ("**Guarantor**")

# MERCHANT AGREEMENT TERMS AND CONDITIONS

## 1. TERMS OF ENROLLMENT IN PROGRAM

### 1.1 Merchant Deposit Agreement and Processor

Merchant shall (A) execute an agreement acceptable to FCG with a Bank acceptable to FCG to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to FCG with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide FCG and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes FCG and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to FCG for the receipts as specified herein and to pay such amounts to FCG. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre-approved by FCG or not. This additional authorization is not a waiver of FCG's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which FCG did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of FCG

### 1.2 Term of Agreement.

This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by FCG as per the terms of this Agreement.

### 1.3 Future Purchase of Increments.

Subject to the terms of this Agreement, FCG offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. FCG reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion..

### 1.4 Reconciliation

As long as an Event of Default, or breach of this Agreement, has not occurred, once per calendar month Merchant may request a retroactive reconciliation of the total Remittance Amount(for the purposes of this Agreement "total Remittance Amount" shall be defined as all payments made by Merchant to FCG after FCG remitted the Purchase Price to Merchant). All requests hereunder must be in writing to office@funduracap.com within five (5) business days of the close of the calendar month. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report if applicable, for the requested month. FCG retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and FCG shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by FCG within five (5) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by FCG shall equal the Specific Percentage of the Future Receipts that Merchant Collected from the date of this Agreement up to and including the date of the Reconciliation request. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with FCG's right and ability to debit Merchant's Account while the Request is pending or to unilaterally modify the initial Remittance amount, in any method other than the ones listed in this Agreement.

### 1.5 Adjustments to the Remittance.

As long an Event of Default, or breach of this Agreement, has not occurred and should the Merchant experience a decrease in its' Future Receipts, Merchant may give notice to FCG to request a decrease in the Remittance. All requests hereunder must be in writing to office@funduracap.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable reports for the requested period. FCG retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and FCG shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks or by other means that can more accurately estimate the Merchant's Future Receipts. Merchant shall provide FCG with viewing access to their bank account as well as all information reasonably requested by FCG to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

### 1.6 Financial Condition

Merchant and Guarantor(s) (as hereinafter defined and limited) authorize FCG and its agents to investigate their financial responsibility and history, and will provide to FCG any authorizations, bank or financial statements, tax returns, etc., as FCG deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. FCG is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

### 1.7 Transactional History.

Merchant authorizes all of its banks, brokers and processor to provide FCG with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide FCG with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from FCG.

### 1.8 Indemnification.

Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by FCG for monies owed to FCG from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by FCG.

### 1.9 No Liability.

In no event will FCG be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In

Initials: DM

the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of FCG's attorney's fees and expenses resulting therefrom.

### 1.10 Reliance on Terms

Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, FCG, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

### 1.11 Sale of Receipts.

Merchant and FCG agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from FCG to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. FCG has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to FCG in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that FCG has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and FCG shall promptly refund to Merchant any interest received by FCG in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that FCG not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

### 1.12 Power of Attorney

Merchant irrevocably appoints FCG as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to FCG from Processor, or in the case of a violation by Merchant of Section 1or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to FCG; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which FCG may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by merchant.

### 1.13 Protections Against Default

The following Protections 1 through 8 may be invoked by FCG immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the FCG electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to FCG; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of FCG, and (ii) the written agreement of any FCG or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to FCG; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; (f) Merchant fails to provide FCG with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from FCG, or (g) Merchant breaches any terms of this Agreement, including but not limited any of the Events of Default contained in Section 3.1 herein. These protections are in addition to any other remedies available to FCG at law, in equity or otherwise pursuant to this Agreement.

**Protection 1.** The full uncollected Purchased Amount plus all fees in addition to attorney's fees in the amount of 30% of the outstanding balance due under this Agreement and the attached Security Agreement become due and payable in full immediately.
**Protection 2.** FCG may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).
**Protection 3.** Merchant hereby authorizes FCG to execute in the name of the Merchant a Confession of Judgment in favor of FCG in the amount of Purchased Amount stated in the Agreement. Upon an Event of Default, FCG may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon.
**Protection 4.** FCG may enforce its security interest in the Collateral.
**Protection 5.** The entire Purchased Amount and all fees in addition to attorney's fees in the amount of 30% of the outstanding balance shall become immediately payable to FCG from Merchant. **Protection 6.** FCG may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if FCG recovers a Judgment against Merchant, Merchant shall be liable for all of FCG's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs. **Protection 7.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to FCG. Upon breach of any provision in this Agreement, FCG may exercise its rights under this Assignment of Lease without prior Notice to Merchant. Protection 8. FCG may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to FCG.

### 1.14 Protection of Information.

Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes FCG to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that FCG obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against FCG or any of its affiliates relating to any (i)investigation undertaken by or on behalf of FCG as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

### 1.15 Confidentiality.

3 | Page                                                                                            Initials: DM

FILED: NASSAU COUNTY CLERK 02/23/2022 08:42 PM	INDEX NO. 613192/2021
NYSCEF DOC. NO. 51	RECEIVED NYSCEF: 02/23/2022

Case 8:24-ap-01011-SC    Doc 1-14    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
             Exhibit Exhibit N - July 22nd Agreement    Page 5 of 15

Merchant understands and agrees that the terms and conditions of the products and services offered by FCG, including this Agreement and any other FCG documents (collectively, "Confidential Information") are proprietary and confidential information of FCG. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of FCG to any person other than an attorney, accountant, financial adviser or employee of ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ or the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles FCG to not only damages in addition to attorney's fees in the amount of 30% of the outstanding balance but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

**1.16 Publicity**

Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes FCG to use its, his or her name in listings of clients and in advertising and marketing materials.

Merchant hereby acknowledges and agrees that FCG may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between FCG and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## 2.	REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

**2.1 Financial Condition and Financial Information.**

Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to FCG, and future statements which will be furnished hereafter at the discretion of FCG, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise FCG of any material adverse change in their financial condition, operation or ownership. FCG may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to FCG within five business days after request from FCG. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

**2.2 Governmental Approvals.**

Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**2.3 Authorization.**

Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Use of Funds.**

Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

**2.5 Electronic Check Processing Agreement.**

Merchant will not change its Processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without FCG's prior written consent. Any such changes shall be a material breach of this Agreement.

**2.6 Change of Name or Location.**

Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and FCG, nor shall Merchant change any of its places of business without prior written consent by FCG.

**2.7 Daily Batch Out.**

Merchant will batch out receipts with the Processor on a daily basis if applicable.

**2.8 Estoppel Certificate.**

Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from FCG to Merchant, execute, acknowledge and deliver to FCG and/or to any other person, firm or corporation specified by FCG, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9 No Bankruptcy.**

As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10 Unencumbered Receipts.**

Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of FCG.

**2.11 Business Purpose.**

4 | Page



Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1

FILED: NASSAU COUNTY CLERK 02/23/2022 08:42 PM                      INDEX NO. 613192/2021
NYSCEF DOC. NO. 51                                                    RECEIVED NYSCEF: 02/23/2022

Case 8:24-ap-01011-SC    Doc 1-14    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
                  Exhibit Exhibit N - July 22nd Agreement    Page 6 of 15

Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.12 Defaults under Other Contracts.**
Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

**2.13 Good Faith.**
Merchant and Guarantor(s)s hereby affirm that Merchant is receiving the Purchase Price and selling FCG the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business

## 3. EVENTS OF DEFAULT AND REMEDIES

**3.1 Events of Default.**
The occurrence of any of the following events shall constitute an "Event of Default" hereunder:
(a)   Merchant or Guarantor shall violate any term or covenant in this Agreement;
(b)   Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;
(c)   the sending of notice of termination by Merchant or verbally notifying FCG of its intent to breach this Agreement;
(d)   the Merchant fails to give FCG 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored by Merchant's bank, and the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;
(f)   Merchant shall transfer or sell all or substantially all of its assets;
(g)   Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;
(h)   Merchant shall use multiple depository accounts without the prior written consent of FCG
(i)   Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party.
(j)   Merchant shall change its depositing account without the prior written consent of FCG; or
(k)   Merchant shall close its depositing account used for ACH debits without the prior written consent of FCG
(l)   Merchant's bank returns a code other than NSF cutting FCG from its collections
(m)   Merchant shall default under any of the terms, covenants and conditions of any other agreement with FCG.

**3.2 Limited Personal Guaranty**
In the Event of a Default, FCG will enforce its rights against the Guarantors of this transaction. Said Guarantors will be jointly and severally liable to FCG for all of FCG's losses and damages, in additional to all costs and expenses and legal fees associated with such enforcement.

**3.3 Remedies.**
In case any Event of Default occurs and is not waived pursuant to Section 4.4. hereof, FCG may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing the Confession of Judgment and executing thereon, and enforcing the Security Agreement contained herein. All rights, powers and remedies of FCG in connection with this Agreement may be exercised at any time by FCG after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.4 Costs**
Merchant shall pay to FCG all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of FCG's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

**3.5 Required Notifications**
Merchant is required to give FCG written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give FCG seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## 4. MISCELLANEOUS

**4.1 Modifications; Agreements.**
No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by FCG.

**4.2 Assignment.**
FCG may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3 Notices.**
All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to FCG shall become effective only upon receipt by FCG. Notices to Merchant shall become effective three days after mailing.

**4.4 Waiver Remedies.**
No failure on the part of FCG to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or

5 | Page 

partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

### 4.5 Binding Effect.

Governing Law, Venue and Jurisdiction. This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted in any court sitting in New York, Texas or Connecticut, and shall be the sole and exclusive venues for any lawsuit, action or proceeding (the "Acceptable Forums"). The parties agree that the said sole and exclusive Acceptable Forums are convenient and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to inconvenience of the jurisdiction or venue. Should a proceeding be initiated in any other forum, each of the parties to this Agreement irrevocably waives any right to oppose any motion or application made by any other party to transfer such proceeding to an Acceptable Forum. **Merchant and Guarantor hereby agree that the mailing of any Summons and Complaint in any proceeding commenced by FCG by certified or registered mail, return receipt requested to the Mailing Address listed on this Agreement, or via email to the Email Address listed on this Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.**

### 4.6 Survival of Representation

etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

### 4.7 Interpretation.

All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

### 4.8 Severability.

In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

### 4.9 Entire Agreement.

Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and FCG and supersede all prior agreements and understandings relating to the subject matter hereof.

### 4.10 JURY TRIAL WAIVER.

THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING INCONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THEENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

### 4.11 CLASS ACTION WAIER.

THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

### 4.12 Facsimile & Digital Acceptance.

Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes

### 4.13 Prejudgment Remedy Waiver

EACH AND EVERY MERCHANT, ENDORSER, GUARANTOR AND SURETY OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY MERCHANT, ENDORSER AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH FCG HEREOF MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENTAND (B) ALL RIGHTS TO REQUEST THAT FCG HEREOF POST A BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID MERCHANTS, ENDORSER OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY THE HOLDER HEREOF BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENT.

Initial: *DM*

FILED: NASSAU COUNTY CLERK 02/23/2022 08:42 PM          INDEX NO. 613192/2021
NYSCEF DOC. NO. 51                                                RECEIVED NYSCEF: 02/23/2022

Case 8:24-ap-01011-SC    Doc 1-14    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
                Exhibit Exhibit N - July 22nd Agreement    Page 8 of 15

# SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: **BAT, INC. and the entities listed on annexed "Exhibit A"**

D/B/A: **COAST PROCESSING**         Federal Id #: _____

Physical Address: **17542 17TH ST. STE 100**  City: **TUSTIN**   State: **CA**   Zip: **92780**

Additional Guarantors: _____

## SECURITY AGREEMENT

Security Interest. This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to FCG a security interest in and lien upon all of their present and future: (a) accounts (the "Accounts Collateral"), chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to FCG under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Collateral "). Merchant agrees to provide other security to FCG upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover FCG's entitlements under this Agreement, FCG is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Collateral. These security interests and liens will secure all of FCG's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, FCG or an affiliate of FCG. FCG is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by FCG without notice or demand of any kind by making an immediate withdrawal or freezing the Collateral. FCG shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, FCG has control over and may direct the disposition of the Collateral, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Collateral.

With respect to such security interests and liens, FCG will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from FCG written consent prior to granting a security interest of any kind in the Collateral to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and FCG is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Collateral. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by FCG. Merchant and Guarantor(s) agree(s) to execute and deliver to FCG such instruments and documents FCG may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. FCG is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to FCG under any other agreement between Merchant or Guarantor(s) and FCG (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as FCG deems necessary to perfect or maintain FCG's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes FCG to file any financing statements deemed necessary by FCG to perfect or maintain FCG's security interest. Merchant and Guarantor(s) shall be liable for, and FCG may charge and collect, all costs and expenses, including but not limited to attorney's fees in the amount of 30% of the outstanding balance, which may be incurred by FCG in protecting, preserving and enforcing FCG's security interest and rights.

Negative Pledge. Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

Consent to Enter Premises and Assign Lease. FCG shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, FCG may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that FCG may enter into an agreement with Merchant's landlord giving FCG the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

Remedies. Upon any Event of Default, FCG may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to FCG, whether by acceleration or otherwise.

7 | Page                                             Initial

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1

# GUARANTY OF PERFORMANCE

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

FCG As an additional inducement for FCG to enter into this Agreement, the undersigned Guarantor(s) hereby provides FCG with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to FCG in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

Guarantor Waivers. In the event of a breach of the above, FCG may seek recovery from Guarantors for all of FCG's losses and damages by enforcement of FCG's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral FCG may hold pursuant to this Agreement or any other guaranty.

FCG does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of:

Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) FCG's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to FCG. In addition, FCG may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to FCG; (ii) release Merchant from its obligations to FCG; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to FCG under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that FCG must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

Guarantor Acknowledgement. Guarantor acknowledges that: (i) He/She is bound by the Prejudgment Remedy Waiver and Class Action Waiver provisions in the Merchant Agreement Terms and Conditions, as well as all other terms and conditions therein, which are incorporated herein by reference; (ii) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

FOR THE MERCHANT (#1) By: __DANIEL S. MARCH__  
(Print Name and Title)     *Daniel S March* (Signature)  
(Social security number)   (Driver's License Number)

FOR THE MERCHANT (#2) By: __TONY M. DIAB__  
(Print Name and Title)     *Tony M Diab* (Signature)  
(Social security number)   (Driver's License Number)

BY OWNER (#1) By: __DANIEL S. MARCH__  
(Print Name and Title)     *Daniel S March* (Signature)  
(Social security number)   (Driver's License Number)

BY OWNER (#2) By: __TONY M. DIAB__  
(Print Name and Title)     *Tony M Diab* (Signature)  
(Social security number)   (Driver's License Number)

FOR THE GUARANTOR(S) By: _____  
(Print Name and Title)     (Signature)  
(Social security number)   (Driver's License Number)

FOR THE GUARANTOR(S) By: _____  
(Print Name and Title)     (Signature)  
(Social security number)   (Driver's License Number)

8 | Page



FILED: NASSAU COUNTY CLERK 02/23/2022 08:42 PM
NYSCEF DOC. NO. 51
INDEX NO. 613192/2021
RECEIVED NYSCEF: 02/23/2022

Case 8:24-ap-01011-SC    Doc 1-14    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
Exhibit Exhibit N - July 22nd Agreement    Page 10 of 15

## APPENDIX A- THE FEE STRUCTURE:

A. **Underwriting Fee** Minimum of $500.00 or up to 12% of the purchase price for underwriting and related expenses.

B. **Origination Fee** Minimum of $500.00 or up to 10% of the purchase price to cover cost of Origination and ACHSetup

C. **NSF Fee (Standard)** $35.00 (each)

D. **Rejected ACH / Blocked ACH / Default Fee** $5,000.00 When Merchant BLOCKS Account from our Debit ACH, or when Merchant directs the bank to reject our Debit ACH, which places them in default (per contract). When Merchant changes bank Account cutting us off from our collections.

E. **Bank Change Fee** $50.00 When Merchant requires a change of Bank Account to be Debited, requiring us to adjust our system.

F. **Wire Fee** - Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH.

G. **Unauthorized Account Fee:** $5,000.00 (if a merchant blocks FCG'S ACH debit of the Account, bounces more than 2 debits of the Account, or simultaneously uses multiple bank accounts or credit- card processors to process its receipts).

H. **Default Fee:** $5,000.00 or up to 10% of the funded amount (if a merchant changes bank accounts or switches to another creditcard processor without FCG's consent, or commits another default pursuant to the Agreement) or bounces more than 2 debits of the Account.

I. **Stacking Fee:** If the Merchant takes any further financing from any other finance /factoring company a fee of 10% of the purchased amount will be added to the Merchants current balance.

J. **Risk Assessment Fee:** $249.00

K. **UCC Fee:** $195.00

L. **Membership Fee:** $299 monthly funding fee for duration of agreement terms or until balance paid.

FOR THE MERCHANT (#1) By: DANIEL S. MARCH
(Print Name and Title)

*Daniel S March*
(Signature)

FOR THE MERCHANT (#2) By: TONY M. DIAB
(Print Name and Title)

*Tony M Diab*
(Signature)

9 | Page

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1

FILED: NASSAU COUNTY CLERK 02/23/2022 08:42 PM  INDEX NO. 613192/2021
NYSCEF DOC. NO. 51  RECEIVED NYSCEF: 02/23/2022

Case 8:24-ap-01011-SC  Doc 1-14  Filed 01/26/24  Entered 01/26/24 15:19:53  Desc
Exhibit Exhibit N - July 22nd Agreement  Page 11 of 15

# AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

Merchant: **BAT, INC. and the entities listed on annexed "Exhibit A"**
(Merchant's Legal Name)

Tax ID: _____

**Merchant Agreement:** Merchant Agreement between Fundura Capital Group LLC, and Merchant, dated as of **07/22/2021**

Designated Checking Account:

Bank Name: [REDACTED]   Routing: [REDACTED]   Account: [REDACTED]
(7 rows, all redacted)

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. **This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement.** Merchant should keep a copy of this important legal document for Merchant's records.

**DISBURSEMENT OF ADVANCE PROCEEDS.** By signing below, Merchant authorizes FCG, to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. **By signing below, Merchant also authorizes FCG to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:**

In the amount of: $ **35,000.00**   (Or) Percentage of each Banking Deposit: **50** %

On the Following Days: **MONDAY - FRIDAY**

If any payment date falls on a weekend or holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Merchant's financial institution for any reason, including without limitation insufficient funds, Merchant understands that FCG may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes FCG to initiate ACH entries to correct any erroneous payment transaction.

**MISCELLANEOUS.** FCG is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association). Merchant agrees to be bound by the ACH Rules as set forth by NACHA. This Authorization Agreement is to remain in full force and effect until FCG has received written notification from Merchant at the address set forth below at least 5 banking days prior of its termination to afford FCG a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

Merchant: **BAT, INC. and the entities listed on annexed "Exhibit A"**   Date: **07/22/2021**
(Merchant's Legal Name)   (Month) (Day) (Year)

Title: _____

*Daniel S March* (Signature)
*Tony M Diab* (Signature)

DANIEL S. MARCH
(Print Name)
TONY M. DIAB

Initials: *DM*

10 | Page

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1

FILED: NASSAU COUNTY CLERK 02/23/2022 08:42 PM                                   INDEX NO. 613192/2021
NYSCEF DOC. NO. 51                                                       RECEIVED NYSCEF: 02/23/2022

Case 8:24-ap-01011-SC   Doc 1-14   Filed 01/26/24   Entered 01/26/24 15:19:53   Desc
                Exhibit Exhibit N - July 22nd Agreement   Page 12 of 15

# BANK LOGIN INFORMATION

Dear Merchant,

Thank you for accepting this offer from Fundura Capital Group LLC. We look forward to being your funding partner for as long as you need.

**Daily ACH Program:**

Fundura Capital Group LLC will require unrestricted access to your bank account, each business day, in order to verify the amount of your daily payment. Please be assured that we carefully safeguard your confidential information on our secured server, and only essential personnel will have access to it.

Fundura Capital Group LLC will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

* Be sure to indicate capital or lower case letters.

Name of Bank: ███████ -

Bank portal website: ███████

Username: ███████        Password: ███████

Security Question / Answer 1: ███████ -

Security Question / Answer 2: ███ -

Security Question / Answer 3: ███████ -

Any other information necessary to access your account: ███

Merchant / Owner Signature: *Daniel S March*     Dated: 07 / 22 / 2021

*Tony M Diab*                                    07 / 22 / 2021

For any questions or concerns about this contract feel free to contact us at: 516.516.4800 and we will be happy to assist you

FUNDURA CAPITAL

11 | Page                                                  Initials 

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1

FILED: NASSAU COUNTY CLERK 02/23/2022 08:42 PM
INDEX NO. 613192/2021
NYSCEF DOC. NO. 51
RECEIVED NYSCEF: 02/23/2022

Case 8:24-ap-01011-SC   Doc 1-14   Filed 01/26/24   Entered 01/26/24 15:19:53   Desc
Exhibit Exhibit N - July 22nd Agreement   Page 13 of 15

# EXHIBIT A

LIST OF ADDITIONAL PARTIES IN WHOSE ASSETS SELLER HAS GRANTED BUYER A BLANKET SECURITY INTEREST:

THE LITIGATION PRACTICE GROUP PC
VULCAN CONSULTING GROUP LLC
EIN: [redacted]
B.A.T. INC. DBA COAST PROCESSING
COAST PROCESSING
1351 CALLE AVANZADO STE 2 SAN CLEMENTE CA 92673
EIN: [redacted]

Buyer may file a UCC-1 financing statement with the Secretary of State, reflecting a blanket security interest in the assets of the above-listed entities.

DATED: 07/22/2021

By: *Daniel S March*

DANIEL S. MARCH

*Tony M Diab*

TONY M. DIAB

*DM*

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1



FUNDURA CAPITAL

## DISBURSMENT AUTHORIZATION

SELLER: BAT, INC. and the entities listed on annexed "Exhibit A"

PURCHASE AMOUNT: $ 1,200,000.00

DATE: 07/22/21

The undersigned hereby authorizes Purchaser to make the following deductions from proceeds and/or draw the following checks from the Purchase Amount in accordance with the terms of the Purchase Agreement.

Deductions

| Amount | Description |
|---|---|
| -$50,000.00 | Origination Fee |
| -$24,220.00 | ACH Setup Fee |
| -$249.00 | Risk Assessment Fee UCC |
| -$195.00 | Fee |
| -$50.00 | Wire Fee |
| -$299.00 | Management Fee |
| -$ | Legal Fee |
| -$1,124,987.00 | Payoff to Berkovitch & Bouskila PLLC re: agreement dated July 14, 2021 matter.:16874 |
| $1,200,000.00 | Total Deductions |
| $0 | Net Funded To Merchant |

**IN WITNESS WHEREOF**, this Disbursement Authorization has been duly executed by the undersigned as of the day and year first above written.

(SELLER)

By: *Daniel S March*                    *Tony M Diab*

Name: DANIEL S. MARCH           TONY M. DIAB

Title: CEO

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1



Audit Trail

| | |
|---|---|
| **TITLE** | Funding Contract - BAT |
| **FILE NAME** | BAT, INC. FUNDURA... OTHER CT (1).pdf |
| **DOCUMENT ID** | 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | • Completed |

## Document History

**SENT** — 07 / 23 / 2021 01:12:57 UTC
Sent for signature to DANIEL S. MARCH (admin@litigationpracticegroup.com) and TONY M. DIAB (tony@coastprocessing.com) from jk@funduracap.com
IP: 89.24.97.11

**VIEWED** — 07 / 23 / 2021 01:16:19 UTC
Viewed by DANIEL S. MARCH (admin@litigationpracticegroup.com)
IP: 64.147.18.130

**SIGNED** — 07 / 23 / 2021 01:18:23 UTC
Signed by DANIEL S. MARCH (admin@litigationpracticegroup.com)
IP: 64.147.18.130

**VIEWED** — 07 / 23 / 2021 01:18:40 UTC
Viewed by TONY M. DIAB (tony@coastprocessing.com)
IP: 64.147.18.130

**SIGNED** — 07 / 23 / 2021 01:19:30 UTC
Signed by TONY M. DIAB (tony@coastprocessing.com)
IP: 64.147.18.130

**COMPLETED** — 07 / 23 / 2021 01:19:30 UTC
The document has been completed.

Powered by HELLOSIGN