# EXHIBIT S

# DIVERSE CAPITAL

# MERCHANT AGREEMENT

**Merchant Agreement, dated** 08/06/2021 (together with the Terms and Conditions attached hereto (the "Terms and Conditions") and the appendices attached hereto, and as amended, restated or otherwise modified from time to time, this "Agreement"), by and among Diverse Capital, LLC, a Connecticut limited liability company ("Company"), the merchant listed below (the "Merchant") and the individual guarantor(s) signatory hereto (each, a "Guarantor").

**Merchant's Legal Name:** THE LITIGATION PRACTICE GROUP PC

**All other names (including any prior names, d/b/as and trade names) used by Merchant at any time:** THE LITIGATION PRACTICE GROUP

**Merchant's Chief Executive Office Address:** ▮

**City:** ▮  **State:** ▮  **Zip:** ▮

☐ Merchant's mailing address is same as address of chief executive office (if not checked, provide mailing address below)

**Merchant's Mailing Address:** 1351 CALLE AVANZADO, STE 4

**City:** SAN CLEMENTE  **State:** CA  **Zip:** 92673

**Type of Entity of Merchant** (circle one): ⦿ Corporation  ○ Limited Liability Company  ○ Limited Liability Partnership  ○ Limited Partnership  ○ Sole Proprietor

**Merchant's Federal EIN:** ▮

## PURCHASE AND SALE OF FUTURE RECEIVABLES

In consideration of the Purchase Price specified below (the "Purchase Price"), Merchant hereby sells, assigns and transfers to Company (making Company the absolute owner thereof), a percentage specified as the Purchased Percentage below (the "Purchased Percentage") of all of Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors, including all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of the Merchant's business (the "Receipts"), for the payments due to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the Purchased Amount specified below (the "Purchased Amount") has been delivered by or on behalf of Merchant to Company.

Merchant is selling a portion of a future revenue stream to Company at a discount, not borrowing money from Company, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Company. The Remittance is a good faith estimate of (a) Purchased Percentage multiplied by (b) the daily average revenues of Merchant during the previous calendar month divided by (c) the number of Business Days (as defined in the Terms and Conditions) in such calendar month. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. Company is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and Company assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give Company a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and each Guarantor are only guaranteeing their performance of the terms of this Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Section 1.3 of the Terms and Conditions.

Company will debit an amount equal to the Remittance specified below (the "Remittance") on each Business Day from only one depositing bank account, which account must be acceptable to, and pre-approved by, Company (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as Company receives payment in full of the Purchased Amount. Merchant hereby authorizes Company to ACH debit the Remittance from the Account on a daily basis (other than on a day that is a legal holiday under the laws of the State of New York or the State of Connecticut or is a day on which banking institutions in such states are authorized or required by law to close). Company's payment of the Purchase Price shall be deemed the acceptance and performance by Company of this Agreement, Merchant understands that it is responsible for ensuring that the Remittance to be debited by Company remains in the Account and will be held responsible for any fees incurred by Company resulting from a rejected ACH attempt or an Event of Default (as defined in the Terms and Conditions). Company is not responsible for any overdrafts or rejected transactions that may result from Company's ACH debiting the Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between Company and Merchant, upon the occurrence of an Event of Default, the Purchased Percentage shall equal 100%. All fees owed to Company by Merchant pursuant to this Agreement are contained in Appendix A attached hereto.

The obligation of Company to fund the Purchase Price hereunder is subject to Company receiving executed counterparts of each of the MCA Documents (as defined in the Terms and Conditions).

**PURCHASE PRICE[1]:** $ 250,000.00  **PURCHASED PERCENTAGE:** 10%  **PURCHASED AMOUNT:** $ 374,750.00  **REMITTANCE:** $ 9,730.00

THE MERCHANT AGREEMENT TERMS AND CONDITIONS ATTACHED HERETO AND EACH OF THE APPENDICES ATTACHED HERETO ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

| **MERCHANT** | **DIVERSE CAPITAL, LLC** |
|---|---|
| (Print Legal Name of Merchant): DANIEL STEPHEN MARCH | |
| By: *DANIEL STEPHEN MARCH* (DocuSigned) 242CC5601A23474... | By: _____ |
| Name (Print Legal Name of Signatory): DANIEL STEPHEN MARCH | Name: _____ |
| Title (Print Title of Signatory): OWNER | Title: _____ |
| **GUARANTOR #1:** | **GUARANTOR #2** |
| (Print Legal Name of Guarantor #1): DANIEL STEPHEN MARCH | (Print Legal Name of Guarantor #2): _____ |
| *DANIEL STEPHEN MARCH* (DocuSigned) 242CC5601A23474... | _____ |

ANY MISREPRESENTATION BY MERCHANT OR ANY GUARANTOR IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

---

[1] **Less any applicable fees as set forth in Appendix A.**

FILED: KINGS COUNTY CLERK 10/28/2021 07:30 AM
NYSCEF DOC. NO. 3
Case 8:24-ap-01011-SC    Doc 1-19    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
Exhibit Exhibit S - First Diverse Agreement    Page 3 of 16
INDEX NO. 527528/2021
RECEIVED NYSCEF: 10/28/2021

**MERCHANT AGREEMENT TERMS AND CONDITIONS**

**1.   TERMS OF ENROLLMENT IN PROGRAM**

**1.1   Merchant Deposit Agreement and Processor**. Merchant shall (A) execute an agreement acceptable to Company with a bank acceptable to Company ("Bank") to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to Company with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide Company and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes Company and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to Company for the receipts as specified herein and to pay such amounts to Company. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre-approved by Company or not. This additional authorization is not a waiver of Company's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which Company did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of Company.

**1.2   Term of Agreement**. This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by Company as per the terms of this Agreement.

**1.3   Adjustments to the Remittance**. If an Event of Default has not occurred, once every two (2) calendar weeks after the funding of the Purchase Price to Merchant, Merchant may give notice to Company to request a change in the Remittance to more accurately reflect the Purchased Percentage of Receipts being collected by Merchant at that time. The amount shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of Business Days in the previous two (2) calendar weeks. Merchant shall provide Company with viewing access to its bank accounts, including the Account, as well as all information reasonably requested by Company to properly calculate the Merchant's Remittance. The adjusted Remittance will become the new daily Remittance until any subsequent adjustment.

**1.4   Financial Condition**. Merchant and Guarantor(s) authorize Company and its agents to investigate their financial responsibility and history, and will provide to Company any authorizations, bank or financial statements, tax returns, etc., as Company deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. Company is authorized to update such information and financial and credit profiles from time to time as it deems appropriate,

**1.5   Transactional History**. Merchant authorizes all of its banks, brokers and processors to provide Company with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide Company with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five (5) days after a request from Company.

**1.6   Indemnification**. Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all fosses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by Company for monies owed to Company from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by Company.

**1.7   No Liability**. In no event will Company be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by each of Merchant and each Guarantor. In the event these claims are nonetheless raised, Merchant and Guarantor(s) will be jointly liable for all of Company's attorney's fees and expenses resulting therefrom.

**1.8   Reliance on Terms**. Section 1.1, 1.5, 1.6, 1.7 and 2.5 of this Agreement are agreed to for the benefit of Merchant, Company, Processor, and Bank and notwithstanding the fact that neither Processor nor Bank is a party to this Agreement, Processor and Bank may rely upon their terms and raise them as a defense in any action.

**1.9   Sale of Receipts (THIS IS NOT A LOAN)**. Merchant and Company agree that the Purchase Price (less the applicable fees agreed to herein) under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from Company to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. Company has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to Company in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that Company has charged or received interest hereunder in excess of the higher applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and Company shall promptly refund to Merchant any interest received by Company in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that Company not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of usury in any action or proceeding. If, notwithstanding such intent, such transfer is not deemed to constitute a sale, Merchant hereby grants to Company a security interest in all right, title and interest of Merchant in and to the Receipts, which security interest shall secure the payment of the Purchased Amount and all other obligations of Merchant under this Agreement. Merchant hereby authorizes Company to file any financing statements deemed necessary or advisable by Company to perfect or maintain Company's interest in the Receipts.

**1.10   Power of Attorney**. Merchant irrevocably appoints Company as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to Company from Processor, or in the case of a violation by Merchant of Section 1 or the occurrence of an Event of Default under Section 3, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (as defined in Section 5); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to Company; and (v) to contact Merchant's banks and financial institutions using Merchant's and Guarantor(s)' personal information to verify the existence of an account and obtain account balances; (vi) to file any claims or take any action or institute any proceeding which Company may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by and from Merchant, and Company is authorized to use Merchant's funds to pay for same; and (vii) Company shall have the right, without waiving any of its rights and remedies and without notice to Merchant or any Guarantor, to notify any credit card processor of the sale of future payment rights and re-direct the remittance of daily settlements to an account of Company's choosing in order to settle all obligations due to Company under this Agreement.

**1.11   Protections against Default**. The following Protections 1 through 7 may be invoked by Company immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning such checks into the Company electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to Company; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of its business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without the express prior written consent of Company; (e) Merchant takes any action, fails to take any action, or offers any incentive, economic or otherwise, the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; or (f) Merchant fails to provide Company with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five (5) days after a request from Company. These protections are in addition to any other remedies available to Company at law, in equity or otherwise pursuant to this Agreement.

**Protection 1**. The full uncollected Purchased Amount plus all fees (including reasonable attorney's fees and expenses) due under this Agreement and the other MCA Documents (as defined in Section 5) become due and payable in full immediately.

**Protection 2**. Company may enforce the provisions of the Guaranty (as defined in Section 5) against any Guarantor.


INITIALS

2

**Protection 3**. Company may enforce its security interest in the Collateral in accordance with the Security Agreement (as defined in Section 5).

**Protection 4**. Company may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if Company recovers a judgment against Merchant, Merchant shall be liable for all of Company's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

**Protection 5**. Merchant shall, upon execution of this Agreement, deliver to Company an executed assignment of lease of Merchant's business premises in favor of Company. Upon breach of any provision in this paragraph 1.10, Company may exercise its rights under such assignment without notice to Merchant.

**Protection 6**. Company may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on the Account or otherwise for all sums due to Company.

**1.12  Protection of Information**. Merchant and each Guarantor, in respect of himself or herself personally, authorizes Company to disclose information concerning Merchant's and such Guarantor's credit standing (including credit bureau reports that Company obtains) and business conduct only to agents, affiliates and credit reporting bureaus. Merchant and such Guarantor each hereby waives to the maximum extent permitted by law any claim for damages against Company or any of its agents or affiliates relating to any (i) investigation undertaken by or on behalf of Company as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.13  Confidentiality**. Merchant understands and agrees that the terms and conditions of the products and services offered by Company, including this Agreement and any other Company documents (collectively, "Confidential Information") are proprietary and confidential information of Company. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of Company to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such Confidential Information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles Company to not only damages arid reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

**1.14  Publicity**. Each of Merchant and each Guarantor hereby authorizes Company to use its, his or her name in listings of clients and in advertising and marketing materials.

**1.15  D/B/A's**. Merchant hereby acknowledges and agrees that Company may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between Company and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**2.    REPRESENTATIONS, WARRANTIES AND COVENANTS**
Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

**2.1  Financial Condition and Financial information**. Merchant's and each Guarantor's bank and financial statements, copies of which have been furnished to Company, and future statements which will be furnished hereafter at the discretion of Company, fairly represent the financial condition of Merchant or such Guarantor, as applicable, as of such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantor(s) have a continuing, affirmative obligation to advise Company of any material adverse change in their financial condition, operation or ownership. Company may request statements at any time during the performance of this Agreement and the Merchant and Guarantor(s) shall provide them to Company within five (5) Business Days after request from Company. Merchant's or Guarantor(s)' failure to do so is a material breach of this Agreement.

**2.2  Governmental Approvals**. Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**2.3  Authorization**. Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4  Use of Funds**. Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes. Merchant will not, directly or through any of its subsidiaries, engage in the business of extending credit for the purpose of purchasing or carrying margin stock, and no proceeds of the Purchase Price will be used to purchase or carry margin stock.

**2.5  Electronic Check Processing Agreement**. Merchant will not change its Processor, add terminals, change its financial institution or bank account(s) (including the Account) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without Company's prior written consent. Any such changes shall be a material breach of this Agreement.

**2.6  Change of Name or Location**. Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and Company, nor shall Merchant change any of its places of business without prior written consent by Company.

**2.7  Daily Batch Out**. Merchant will batch out receipts with the Processor on a daily basis if applicable.

**2.8  Estoppel Certificate**. Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from Company to Merchant, execute, acknowledge and deliver to Company and/or to any other person, firm or corporation specified by Company, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9  No Bankruptcy**. As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six (6) months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further represents and warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10  Unencumbered Receipts**. Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of Company.

**2.11  Business Purpose**. Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates.

**2.12  Defaults under Other Contracts**. Merchant's execution of, and/or performance under, this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

**2.13  Good Faith**. Each of Merchant and each Guarantor hereby affirms that Merchant is receiving the Purchase Price and selling Company the Purchased Amount in good faith and will use the Purchase Price funds in accordance with Section 2.4.

**3.    EVENTS OF DEFAULT AND REMEDIES**

**3.1  Events of Default**. The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a)  Merchant or any Guarantor shall violate any term or covenant in this Agreement or any other MCA Document;

(b)  Merchant fails to pay (or cause to be paid) any fees described on Appendix A attached hereto when and as required to be paid as described therein;

(c)  any representation or warranty by Merchant in this Agreement or any other MCA Document shall prove to have been incorrect, false or misleading in any material respect when made;

(d)  the sending of notice of termination by Merchant or notifying Company verbally or in writing of its intent to breach this Agreement;

(e)  the Merchant fails to give Company 24 hours' advance notice that there will be insufficient funds in the Account such that the ACH of the Remittance amount will not be honored by Bank, and the Merchant fails to supply ail requested documentation and allow for daily and/or real time monitoring of its bank accounts (including the Account);

(f)  Merchant shall enter into any financing agreements with any other party including but not limited to: loans, merchant cash advances, receivables financing, factoring, or any other agreement that will increase the total debt or merchant cash advances owed by Merchant to any party other than Company.

(g)  Merchant shall transfer or sell all or substantially all of its assets;

(h)  Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;

(i)  Merchant shall use multiple depository accounts without the prior written consent of Company;

(j)  Merchant shall change the Bank Account without the prior written consent of Company;

(k)  Merchant shall close the Bank Account without the prior written consent of Company;

(l)  Merchant fails to provide timely notice to Company such that in any given calendar month, there are two or more ACH transactions attempted by Company that are rejected by Merchant's bank;

(m)  Merchant shall default under any of the terms, covenants and conditions of any other agreement with Company.


INITIALS

**3.2** **Remedies**. In case any Event of Default occurs and is not waived pursuant to Section 4.5. hereof, Company may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy. All rights, powers and remedies of Company in connection with this Agreement may be exercised at any time by Company after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3** **Costs**. Merchant shall pay to Company all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the covenants in this Agreement and the enforcement thereof, and (c) the enforcement of Company's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

**3.4** **Required Notifications**. Merchant is required to give Company written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give Company seven (7) days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

**4.    MISCELLANEOUS**

**4.1** **Modifications; Agreements**. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by Company.

**4.2** **Assignment**. Company may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part, including by assigning, transferring or selling a participation in the Purchased Amount. Merchant acknowledges that, if any such assignment is made, persons other than Company may have the right to exercise rights or remedies against Merchant pursuant to this Agreement. Merchant shall not have, and no Guarantor shall have, the right to assign its rights and/or obligations under this Agreement and/or the other MCA Documents or any interest herein or therein without the prior written consent of Company, which consent may be withheld in Company's sole discretion.

**4.3** **Negative Pledge**. Each of Merchant and each Guarantor agrees not to create, incur, assume, or permit to exist, directly or indirectly, any additional cash advances, loans, lien or other encumbrance on or with respect to any of the Collateral, as applicable, without written permission of Company.

**4.4** **Notices**. All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mall, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to Company shall become effective only upon receipt by Company. Notices to Merchant shall become effective three (3) days after mailing.

**4.5** **Waiver Remedies**. No failure on the part of Company to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the' exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.6** **Binding Effect; Governing Law, Venue and Jurisdiction**. This Agreement shall be binding upon and inure to the benefit of Merchant, Company and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Company, which consent may be withheld in Company's sole discretion. Company reserves the rights to assign this Agreement pursuant to Section 4.2 with or without prior written notice to Merchant. This Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Except required to enforce a security interest or otherwise required by applicable law, any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall be instituted in any court sitting in New York, or Connecticut to the exclusion of all other forums (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by Company to transfer such proceeding to an Acceptable Forum.

**4.7** **Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.8** **Interpretation**. All parties hereto have reviewed this Agreement with attorneys of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either party hereto as drafter.

**4.9** **Severability**. In case any of the provisions in this Agreement are found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof.

**4.10** **Entire Agreement**. This Agreement and the other MCA Documents embody the entire agreement among Merchant, each Guarantor and Company and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.11** **JURY TRIAL WAIVER**. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVE KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR RESPECTIVE ATTORNEYS.

**4.12** **CLASS ACTION WAIVER**. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**4.13** **Counterparts & Digital Acceptance**. This Agreement and the other MCA Documents may be executed in multiple counterparts, each of which shall be deemed an original provided all parties have executed a counterpart of this Agreement, and all such counterparts shall together constitute one and the same instrument. Any signature delivered by a party hereto by facsimile transmission, e-mail or other electronic means will be deemed to be an original signature. [The parties hereto consent and agree that use of a key pad, mouse or other devise to select an item, button, icon or similar act or action while using any electronic service in executing this Agreement or the other MCA Documents constitutes a valid and enforceable signature, acceptance and agreement as if actually signed in writing. Further, the parties hereto agree that no certification authority or other third-party verification is necessary to the validity of an electronic signature and that the lack of such certification or third-party verification will not in any way affect the enforceability of the signature or any resulting contract among the parties hereto.]

**4.14** **Headings**. The headings used in this Agreement will be used only for the purpose of reference and shall not be deemed to govern, limit, modify or in any other manner affect the scope, meaning or intent of the provisions of this Agreement or be given any legal effect whatsoever.

**4.15** **Service of Process**. In addition to the methods of service allowed by the New York State Civil Practice Law & Rules ("CPLR"), Merchant and all Guarantors hereby expressly consent to service of process upon it by registered or certified mail, return receipt requested. Service hereunder shall be complete upon Merchant (or, where applicable, Guarantors') actual receipt of process or upon Company's receipt of the return thereof by the United States Postal Services as *Refused* or *Undeliverable*. Merchant and Guarantors must promptly notify Company, in writing, of each and every change of address to which service of process can be made. Service upon the last known address shall be sufficient. Merchant and Guarantors shall have thirty (30) calendar days after service hereunder is complete in which to respond. Furthermore, Merchant and Guarantors expressly consent that any and all notices, demands, requests or other communications under and pursuant to this Agreement for the Purchase and Sale of Future Receivables shall be delivered in accordance with the provisions of this Agreement for the Purchase and Sale of Future Receivables.

**4.16** **Commercial Waiver.** The parties acknowledge that the transaction of which this agreement is a part is a commercial transaction as defined by Connecticut Law. By signing this agreement you agree to be personally liable for all charges incurred on this account and you further waive your right to and/or your company's right to notice and hearing in any civil collection action seeking a prejudgment remedy or attachment as outlined in Connecticut General Statutes Sections 52-278a to 52-278f. Further, you agree that upon default of this agreement, you waive all rights to request that the purchaser hereof post a bond, with or without surety, to protect said merchant or guarantor against damages that may be caused by any prejudgment remedy sought or obtained by the purchaser hereof. You agree to be liable for costs of collection and reasonable attorneys fees in any such action.

**5.    DEFINED TERMS**

**5.1**    As used herein the following terms have the following meanings:

["ACH Form" means any one or more ACH authorization forms delivered by or on behalf of Merchant or any Guarantor regarding the Account for the benefit of Company.]

"Affidavit" means any one or more affidavits of confession of judgement signed by or on behalf of Merchant or any Guarantor with respect for the benefit of Company.

["Balance Transfer Form" means any one or more balance transfer forms delivered by or on behalf of Merchant or any Guarantor regarding the Account for the benefit of Company.]

"Business Day" means any day that is not a Saturday, Sunday or other day that is a legal holiday under the laws of the State of New York or the State of Connecticut or is a day on which banking institutions in such states are authorized or required by law to close.

"Collateral" has the meaning ascribed to such term in the Security Agreement.

"Guaranty" means that certain Guaranty of Performance, dated as of the date hereof, by and among Company, Merchant and each Guarantor, as may be amended, restated or otherwise modified from time to time

"MCA Documents" means this Merchant Agreement, the Security Agreement, the Guaranty, [the ACH Form,] the Balance Transfer Form and the Affidavit.

"Security Agreement" means that certain Security Agreement, dated as of the date hereof, by and among Company, Merchant and each Guarantor, as may be amended, restated or otherwise modified from time to time


INITIALS: DSM

FILED: KINGS COUNTY CLERK 10/28/2021 07:30 AM                INDEX NO. 527528/2021
NYSCEF DOC. NO. 3                                                            RECEIVED NYSCEF: 10/28/2021

Case 8:24-ap-01011-SC    Doc 1-19    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
              Exhibit Exhibit S - First Diverse Agreement    Page 6 of 16

# DIVERSE CAPITAL

## MERCHANT AGREEMENT APPENDIX A:

### FEE STRUCTURE

Reference is made to that certain Merchant Agreement, dated as of 08/06/2021 (together with the Merchant Agreement Terms and Conditions attached thereto and the appendices attached thereto, and as may be amended, restated or otherwise modified from time to time, the "Merchant Agreement"), by and among Diverse Capital, LLC, a Connecticut limited liability company ("Company"), THE LITIGATION PRACTICE GROUP PC ("Merchant") and the Guarantor(s) party thereto, to which this Appendix A is attached. Capitalized terms used but not defined in this Appendix A shall have the respective meanings set forth in the Merchant Agreement.

A. Origination Fee: $295.00 to cover cost of origination.

B. Brokerage and Underwriting Fee: An amount equal to the greater of (i) $499.00 and (ii) 12% of the Purchased Amount to cover underwriting and related expenses. This fee is deemed earned upon Merchant signing the Merchant Agreement. If for whatever reason, Company determines, in its sole discretion, to cancel the deal, Merchant agrees that Company may withdraw this non-refundable brokerage and underwriting fee.

C. NSF Fee: $50.00 each instance in which Bank returns a code of "NSF."

D. Default Fee: $5,000.00 when Merchant breaches any material terms of the Merchant Agreement.

E. Blocked Account Fee: $5,000.00 when Merchant breaches the Merchant Agreement by placing a stop-payment on Company's ACH or closes the Account.

F. Bank Change Fee: $50.00 when Merchant requires a change of the Account, requiring Company to adjust its system and records.

G. Wire Fee: Merchant shall receive the Purchase Price electronically in its designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH, as applicable.

H. ACH Program Fee: $299.00 per month for the duration of the Merchant Agreement. See Appendix E.

I. Stacking Fee: An amount equal to [the greater of (i) 10% of outstanding Purchased Amount or (ii) $25,000]. Additionally, in accordance with Appendix D to this Merchant Agreement, taking on additional financing will be deemed a breach of this Merchant Agreement, upon which Company may invoke all of its rights per the terms of the MCA Documents.

J. UCC Fee: $195.00.

K. Miscellaneous Service Fees: Merchant agrees that it shall pay for certain services related to the transactions under and in connection with the Merchant Agreement.

Acknowledged and Agreed:

**MERCHANT**
(Print Legal Name of Merchant): DANIEL STEPHEN MARCH

By: *Daniel Stephen March* (DocuSigned by: 242CC5601A23474...)

Name (Print Legal Name of Signatory): DANIEL STEPHEN MARCH

Title (Print Title of Signatory): OWNER

FILED: KINGS COUNTY CLERK 10/28/2021 07:30 AM        INDEX NO. 527528/2021
NYSCEF DOC. NO. 3                                      RECEIVED NYSCEF: 10/28/2021

Case 8:24-ap-01011-SC    Doc 1-19    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
                  Exhibit Exhibit S - First Diverse Agreement    Page 7 of 16

DocuSign Envelope ID: 3D471450-2515-4101-B459-06527DB7E1BC

# DIVERSE CAPITAL

**Appendix B:**

**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)**

**DEFINITIONS**:

**Company**: Diverse Capital, LLC, a Connecticut limited liability company

**Merchant**: THE LITIGATION PRACTICE GROUP PC
(Merchant's Legal Name)

**Merchant Agreement**: Merchant Agreement, dated as of 08/06/2021, by and among Company, Merchant and the Guarantor(s) party thereto, to which this Appendix B is attached (together with the Merchant Agreement Terms and Conditions attached thereto and the other appendices attached thereto, and as may be amended, restated or otherwise modified from time to time,).

**Designated Checking Account**:

**Bank Name**: _____   **Branch**: _____

**Tax ID**: _____

**ABA: Routing**: _____   **DDA: Accounting**: _____

Capitalized terms used but not defined in this Appendix B shall have the respective meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. **This Appendix B is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep a copy of this important legal document for Merchant's records.**

DISBURSEMENT OF ADVANCE PROCEEDS. By signing below, Merchant authorizes Company to disburse an amount equal to (i) the Purchase Price less (ii) the amount of any applicable fees upon Company's approval of the purchase of the Receipts by initiating ACH credits to the Account, in the amounts and at the times specified in the Merchant Agreement. **By signing below, Merchant also authorizes Company to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Account, as follows**:

**In the Amount of**: $ 9,730.00   Daily

(or) Percentage of each Banking Deposit: _____ %

On the Following Days (each, a "Payment Date"): MONDAY-FRIDAY

If any Payment Date falls on a Business Day in which the Merchant's Bank is closed, Merchant understands and agrees that the payment may be executed on the next Business Day for which the Merchant's Bank is open. If a payment is rejected by Bank for any reason, including without limitation insufficient funds, Merchant understands that Company may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes Company to initiate ACH entries to correct any erroneous payment transaction.

**MISCELLANEOUS**. Company is not responsible for any fees charged by Bank as the result of credits or debits initiated under this Appendix B. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association).

This Appendix B is to remain in full force and effect until Company has received written notification from Merchant at the address set forth below at least five (5) Business Days prior to its termination to afford Company a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Account. Merchant will not dispute any ACH transaction initiated pursuant to this Appendix B, provided the transaction corresponds to the terms of this Appendix B. Merchant requests that Bank honor all ACH entries initiated in accordance with this Appendix B.

**MERCHANT**
(Print Legal Name of Merchant): DANIEL STEPHEN MARCH

By: *Daniel Stephen March*
242CC5601A23474...

Name (Print Legal Name of Signatory): DANIEL STEPHEN MARCH
Title (Print Title of Signatory): OWNER

6

FILED: KINGS COUNTY CLERK 10/28/2021 07:30 AM
NYSCEF DOC. NO. 3
INDEX NO. 527528/2021
RECEIVED NYSCEF: 10/28/2021

Case 8:24-ap-01011-SC    Doc 1-19    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
Exhibit Exhibit S - First Diverse Agreement    Page 8 of 16

# DIVERSE CAPITAL

**Appendix C:**

**Bank Portal Information**

Thank you for accepting an offer from Diverse Capital, LLC, a Connecticut limited liability company. We are looking forward to building a relationship with your business that allows you to reach and exceed your goals. Please note that prior to funding your account, our Underwriting Department needs to see the most recent balance and activity information in real-time as a fraud countermeasure and in order to ensure the health of your business aligns with the terms of your offer. For your convenience, we have three secure options for you to choose from to complete this step. After being completed and executed, please e-mail this Appendix C to your funding specialist.

**Please provide information required for read-only access* to your business account.**

*Be sure to indicate capital or lower case letters.*

**Bank Portal Website:** _____

**Username:** _____

**Password:** _____

**Security Question/Answer 1:** _____

**Security Question/Answer 2:** _____

**Security Question/Answer 3:** _____

**Any other information necessary to access your account:** _____

_____

➡ 
INITIALS

# DIVERSE CAPITAL

## Appendix D:

## NO STACKING ADDENDUM

Reference is made to that certain Merchant Agreement, dated as of 08/06/2021 (together with the Merchant Agreement Terms and Conditions attached thereto and the appendices attached thereto, and as may be amended, restated or otherwise modified from time to time, the "Merchant Agreement"), by and among Diverse Capital, LLC, a Connecticut limited liability company ("Company"), THE LITIGATION PRACTICE GROUP PC ("Merchant") and the Guarantor(s) party thereto, to which this Appendix D is attached. Capitalized terms used but not defined in this Appendix D shall have the respective meanings set forth in the Merchant Agreement.

This Appendix D is to certify that Merchant is prohibited from initiating a cash advance or any loan products with any party other than Company. Doing so will place Merchant in a breach of contract, and Merchant will be liable for the entire amount owed to Company immediately, plus attorneys' fees, costs, liquidated damages and a default fee in an amount equal to [the greater of (i) $2,500 and (ii) 20% of the Purchased Amount].

Amounts received from any merchant cash advances received from a party other than Company subsequent to the date of the Merchant Agreement will be subject to collections Company to satisfy the outstanding account balance under the Merchant Agreement.

By its signature below, Merchant agrees to be bound by this Appendix D.

This authorization is to remain in full force and effect until Company receives written notification from the Merchant of its termination in such time and in such manner to afford Company reasonable opportunity to act on it. Revocation of this authorization prior to remittance of the balance owed pursuant to the MCA Documents shall constitute breach thereunder.

**MERCHANT**
(Print Legal Name of Merchant): DANIEL STEPHEN MARCH
By: *DANIEL STEPHEN MARCH* (DocuSigned — 242CC5601A23474...)
Name (Print Legal Name of Signatory): DANIEL STEPHEN MARCH
Title (Print Title of Signatory): OWNER

# DIVERSE CAPITAL

**Appendix E:**

**FUNDERSLINK ADDENDUM**

This Appendix E is entered on __08/06/2021__, by and among Diverse Capital, LLC, a Connecticut limited liability company ("Company"), DANIEL STEPHEN MARCH ("Merchant") and Funderslink, LLC, a [_____] limited liability company ("Funderslink").

Should any terms of this Appendix E conflict with the Merchant Agreement dated as of the date hereof (together with the Merchant Agreement Terms and Conditions attached thereto and the appendices attached thereto, and as may be amended, restated or otherwise modified from time to time, the "Merchant Agreement"), by and among Company, Merchant and the Guarantor(s) party thereto, to which this Appendix E is attached, the terms of this Appendix E shall govern and be controlling. Capitalized terms used herein, but not otherwise defined, shall have the same definition as in the Merchant Agreement.

Merchant represents and warrants that it understands that Company must engage a third-party, namely Funderslink, to manage the ACH withdrawals, reporting and deal tracking. For this service, Merchant agrees to pay Funderslink a nominal fee of $299.00 per month. This amount is due on the first day of the Merchant Agreement and every subsequent thirty days until the Purchased Amount is paid in full to Company.

IN WITNESS WHEREOF, the parties hereto have caused this Appendix E to be duly executed as of the date first above written.

**MERCHANT**
(Print Legal Name of Merchant): __DANIEL STEPHEN MARCH__

By: __DANIEL STEPHEN MARCH__ (DocuSigned, 242CC5601A23474...)

Name (Print Legal Name of Signatory): __DANIEL STEPHEN MARCH__

Title (Print Title of Signatory): __OWNER__

**DIVERSE CAPITAL, LLC**

By: _____

Name: _____

Title: _____

**FUNDERSLINK, LLC**

By: _____

Name: _____

Title: _____

9

# DIVERSE CAPITAL

# SECURITY AGREEMENT

Security Agreement, dated 08/06/2021 (as may be amended, restated or otherwise modified from time to time, this "Agreement"), by and among Diverse Capital, LLC, a Connecticut limited liability company ("Company"), the merchant listed below (the "Merchant") and the individual guarantor(s) signatory hereto (each, a "Guarantor").

**Merchant's Legal Name:** THE LITIGATION PRACTICE GROUP PC

**Merchant's Chief Executive Office Address:** ▮

**City:** ▮   **State:** ▮   **Zip:** ▮

**Merchant's Federal EIN:** ▮

1. Company, Merchant and each Guarantor are parties to that certain Merchant Agreement, dated as of the date hereof (together with the Merchant Agreement Terms and Conditions attached thereto and the appendices attached thereto, and as may be amended, restated or otherwise modified from time to time, the "Merchant Agreement"), pursuant to which COMPANY agreed to purchase the Merchant's Receipts (as defined therein) in exchange for the Purchase Price (as defined therein). Capitalized terms used but not defined in this Agreement shall have the respective meanings set forth in the Merchant Agreement.

2. The obligation of Company to fund the Purchase Price under the Merchant Agreement is conditioned upon, among other things, the execution and delivery of this Agreement by Merchant and each Guarantor. Each Guarantor is an affiliate of Merchant, will derive substantial benefits from the sale of the Receipts pursuant to the Merchant Agreement and is willing to execute and deliver this Agreement in order to induce COMPANY to purchase such Receipts.

3. This Agreement will constitute a security agreement under the UCC (as defined below). Each of Merchant and each Guarantor grants to Company a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code in effect in any applicable jurisdiction and as may be amended from time to time (the "UCC"), now or hereafter owned or acquired by Merchant or such Guarantor, (b) all funds at any time in the Account, regardless of the source of such funds, (c) present and future electronic check transactions and (d) all proceeds of the foregoing, as that term is defined in Article 9 of the UCC (collectively, and together with any Cross-Collateral (as defined below), the "Collateral"). Merchant agrees to provide other security to Company upon request to secure Merchant's obligations under this Agreement. These security interests and liens will secure all of Merchant's payment and performance obligations under the MCA Documents and each Guarantor's payment and performance obligations under the MCA Documents. Company is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

4. This security interest may be exercised by Company without notice or demand of any kind by making an immediate withdrawal or freezing the Collateral. Company shall have the right to notify account debtors at any time. [Pursuant to Article 9 of the UCC, Company has control over and may direct the disposition of the Collateral, without further consent of Merchant.] Merchant hereby represents and warrants that no other person or entity has a security interest in the Collateral.

5. With respect to such security interests and liens, Company will have all rights afforded under the UCC, any other applicable law and in equity. Merchant will obtain from Company written consent prior to granting a security interest of any kind in the Collateral to a third party. Each of Merchant and each Guarantor agrees to execute and deliver to Company such instruments and documents Company may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. Company is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

6. Each of Merchant and each Guarantor acknowledges and agrees that any security interest granted to Company under any other agreement between Merchant or such Guarantor and Company (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Each of Merchant and each Guarantor agrees to execute any documents or take any action in connection with this Agreement as Company deems necessary to perfect or maintain Company's first priority security interest in the Collateral, including the execution of any account control agreements. Each of Merchant and each Guarantor hereby authorizes Company to file any financing statements deemed necessary by Company to perfect or maintain Company's security interest. Merchant and Guarantor(s) shall be liable for, and Company may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by Company in protecting, preserving and enforcing Company's security interest and rights.

7. Each of Merchant and each Guarantor agrees not to create, incur, assume, or permit to exist, directly or indirectly, any additional cash advances, loans, lien or other encumbrance on or with respect to any of the Collateral, as applicable, without written permission of Company.

8. The provisions in Section 4 of the Merchant Agreement are hereby incorporated by reference as if fully stated herein and shall apply to this Agreement, *mutatis mutandis*.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

**MERCHANT**
(Print Legal Name of Merchant): DANIEL STEPHEN MARCH

By:  *DANIEL STEPHEN MARCH*
    242CC5601A23474...

Name (Print Legal Name of Signatory): DANIEL STEPHEN MARCH

Title (Print Title of Signatory): OWNER

**GUARANTOR #1:**
(Print Legal Name of Guarantor #1): DANIEL STEPHEN MARCH

 *DANIEL STEPHEN MARCH*
242CC5601A23474...

**GUARANTOR #2**
(Print Legal Name of Guarantor #2): _____

**DIVERSE CAPITAL, LLC**

By: _____

Name: _____

Title: _____

---

THE TERMS, DEFINITIONS, CONDITIONS, AND INFORMATION SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE "TERMS AND CONDITIONS" THERETO, ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT.

FILED: KINGS COUNTY CLERK 10/28/2021 07:30 AM    INDEX NO. 527528/2021
NYSCEF DOC. NO. 3                                    RECEIVED NYSCEF: 10/28/2021

Case 8:24-ap-01011-SC    Doc 1-19    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
Exhibit Exhibit S - First Diverse Agreement    Page 12 of 16

**DIVERSE CAPITAL**

## Guaranty of Performance

Guaranty of Performance, dated 08/06/2021 (as may be amended, restated or otherwise modified from time to time, this "Guaranty"), by and among Diverse Capital, LLC, a Connecticut limited liability company ("Company"), the merchant listed below (the "Merchant") and the individual guarantor(s) signatory hereto (each, a "Guarantor").

**Merchant's Legal Name**: THE LITIGATION PRACTICE GROUP PC

**Merchant's Chief Executive Office Address**: [redacted]

**City**: [redacted]   **State**: [redacted]   **Zip**: [redacted]

**Merchant's Federal EIN**: [redacted]

1. Company, Merchant and each Guarantor are parties to that certain Merchant Agreement, dated as of the date hereof (together with the Merchant Agreement Terms and Conditions attached thereto and the appendices attached thereto, and as may be amended, restated or otherwise modified from time to time, the "Merchant Agreement"), pursuant to which COMPANY agreed to purchase the Merchant's Receipts (as defined therein) in exchange for the Purchase Price (as defined therein). Capitalized terms used but not defined in this Guaranty shall have the respective meanings set forth in the Merchant Agreement.

2. The obligation of Company to fund the Purchase Price under the Merchant Agreement is conditioned upon, among other things, the execution and delivery of this Guaranty by Merchant and each Guarantor. Each Guarantor is an affiliate of Merchant, will derive substantial benefits from the sale of the Receipts pursuant to the Merchant Agreement and is willing to execute and deliver this Guaranty in order to induce COMPANY to purchase such Receipts.

3. Each Guarantor jointly and severally guarantees Merchant's good faith, truthfulness and performance of all of the representations, warranties and covenants made by Merchant in each MCA Document as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Each of Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Merchant Agreement or in any other MCA Document or upon the occurrence of an Event of Default.

4. Company does not have to notify any Guarantor of any of the following events and no Guarantor will be released from its obligations under this Guaranty if it is not notified of: (i) Merchant's failure to pay timely any amount required under the Merchant Agreement or any other MCA Document; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any Collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) Company's acceptance of the MCA Documents; and (v) any renewal, extension or other modification of the Merchant Agreement, any other MCA Document or Merchant's other obligations to Company. In addition, Company may take any of the following actions without releasing Guarantor from any of its obligations under this Guaranty: (i) renew, extend or otherwise modify the Merchant Agreement, any other MCA Document or Merchant's other obligations to Company; (ii) release Merchant from its obligations to Company; (iii) sell, release, impair, waive or otherwise fail to realize upon any Collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any Collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under any of the MCA Documents. Until the Purchased Amount and Merchant's other obligations to Company under the Merchant Agreement and the other MCA Documents are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Guaranty or any other MCA Document. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any Collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Guaranty or any other MCA Document: (I) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that Company must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Guaranty and the other MCA Documents shall include that amount.

5. Each Guarantor acknowledges that: (i) he/she is bound by the Class Action Waiver contained in Section 4.12 of the Merchant Agreement; (ii) he/she understands the seriousness of the provisions of this Guaranty and the other MCA Documents; (iii) he/she has had a full opportunity to consult with counsel of his/her choice; and (iv) he/she has consulted with counsel of his/her choice or has decided not to avail himself/herself of that opportunity.

6. Section 4 of the Merchant Agreement are hereby incorporated by reference as if fully stated herein and shall apply to this Guaranty, *mutatis mutandis*.

IN WITNESS WHEREOF, the parties hereto have caused this Guaranty to be duly executed as of the date first above written.

**MERCHANT**
(Print Legal Name of Merchant): DANIEL STEPHEN MARCH

By: *DANIEL STEPHEN MARCH* (DocuSigned)
242CC5601A23474...

Name (Print Legal Name of Signatory): DANIEL STEPHEN MARCH

Title (Print Title of Signatory): OWNER

**GUARANTOR #1:**
(Print Legal Name of Guarantor #1): DANIEL STEPHEN MARCH

*DANIEL STEPHEN MARCH* (DocuSigned)
242CC5601A23474...

Driver's License Number: _____
Social Security Number: [redacted]

**GUARANTOR #2**
(Print Legal Name of Guarantor #2): _____

Driver's License Number: _____
Social Security Number: _____

**DIVERSE CAPITAL, LLC**

By: _____

Name: _____

Title: _____

THE TERMS, DEFINITIONS, CONDITIONS, AND INFORMATION SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE "TERMS AND CONDITIONS" ATTACHED THERETO, ARE HEREBAY INCORPORATED IN AND MADE A PART OF THIS GUARANTY.

FILED: KINGS COUNTY CLERK 10/28/2021 07:30 AM                INDEX NO. 527528/2021
NYSCEF DOC. NO. 3                                        RECEIVED NYSCEF: 10/28/2021

Case 8:24-ap-01011-SC    Doc 1-19    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
                Exhibit Exhibit S - First Diverse Agreement    Page 13 of 16

# ACH AUTHORIZATION FORM

*All information on this form is required unless otherwise noted.*

## BUSINESS AYTHORIZED TO DEBIT/CREDIT ACCOUNT

| Authorized Business Name | | Authorized Business Phone Number | | |
|---|---|---|---|---|
| Authorized Business Address | | City | State | Zip |

## ACCOUNT HOLDER INFORMATION

| Account Holder First Name | Account Holder Last Name | THE LITIGATION PRACTICE GROUP PC<br>Account Holder DBA Name (If Business Account) | Phone Number |
|---|---|---|---|
| Account Holder Address | | | |

## ACCOUNT HOLDER BANK INFORMATION

**DANIEL STEPHEN MARCH**

| Account Holder Fist Name | Branch City | State | Zip |
|---|---|---|---|

How to find your Routing and Account Numbers on a check

| Bank Routing Code | Bank Account Number | Business Checking | Personal Checking | Savings |
|---|---|---|---|---|

| Bank Routing Number (9 digits) | Bank Account Number |
|---|---|

## TRANSACTION INFORMATION

| Goods Purchased/Services Rendered | | On time    Recurring<br>Rate_____<br>No. of Transactions_____  Or Open Ended |
|---|---|---|
| Amount of Transaction | Effective Date | |

## AUTHORIZATION

In exchange for products and/or services listed above the undersigned hereby authorizes:

To electronically draft via Automated Clearing House system the amounts indicated above from the account identified above. This authority will continue until withdrawn in writhing by the above-listed account holder. The undersigned individual hereby certifies that he/she is duly authorized to execute this form on behalf of the above-listed account holder. The above-listed account holder acknowledges that it is subject a $25 reject fee if items are returned for insufficient funds.

Account Holder:_____

By: *DANIEL STEPHEN MARCH* (DocuSigned by, 242CC5601A23474...)
Signature of Account Holder

| DANIEL STEPHEN | MARCH | OWNER | 08/06/2021 |
|---|---|---|---|
| First Name of Account Holder | Last Name of Account Holder | Title of Account Holder | Date |

# DIVERSE CAPITAL

## BALANCE TRANSFER FORM

| | |
|---|---|
| Merchant Legal Name ("Merchant"): | THE LITIGATION PRACTICE GROUP PC |
| Name of Authorized Officer of Merchant ("Authorized Officer"): | DANIEL STEPHEN MARCH |
| Title of Authorized Officer: | |
| DBA: | THE LITIGATION PRACTICE GROUP |
| Physical Address: | ▇▇▇▇▇▇▇▇▇▇ |
| City: | ▇▇▇▇ |
| State: | ▇ |
| Zip Code: | ▇▇ |
| Date: | 08/06/2021 |
| Transferee: | Diverse Capital, LLC, a Connecticut limited liability company ("Company") |
| Address of Transferee: | 750 Main Street Suite 906, Hartford CT 06103 |
| [Date of previous secured agreement:] | |
| Remaining [RTR Concern]: | |

To Whom It May Concern:

[I, Authorized Officer, on behalf of Merchant, hereby authorize Company to debit the remaining RTR balance which is currently due and owing to Company pursuant to the previous Merchant Agreement, entered into by and among Company, Merchant and the Guarantor(s) party thereto.

I acknowledge that as a result of the above-referenced debit, the amount paid to Merchant by Company pursuant to the new secured agreement will be reduced by the amount of the remaining RTR.]

Thank you,

Merchant Legal Name: THE LITIGATION PRACTICE GROUP PC

By: *DANIEL STEPHEN MARCH*
    DocuSigned by:
    242CC5601A234Z4

Name: DANIEL STEPHEN MARCH

Title: OWNER

# DIVERSE CAPITAL

## CREDIT REPORT AUTHORIZATION FORM

Merchant hereby authorizes Diverse Capital, LLC and its designated agents and representatives to conduct a comprehensive review of Merchant's (and that of any guarantor's or co-obligor's) background through a credit report and/or an investigative credit report to be generated for the underwriting/application process in connection with this Agreement, as well as a subsequent renewal of this Agreement and/or any collection action related to same. Merchant understands that the scope of the credit report/investigative credit report may include, but is not limited to, the following areas: verification of Social Security number; current and previous residences; employment history, including all personnel files; education; references; credit history and reports; criminal history, including records from any criminal justice agency in any or all federal, state or county jurisdictions; birth records; motor vehicle records, including traffic citations and registration; and any other public records.

Merchant hereby authorizes the complete release of these records or data pertaining to Merchant that an individual, company, firm, corporation or public agency may have. Merchant hereby authorizes and requests any present or former employer, school, police department, financial institution or other persons having personal knowledge of Merchant to furnish Diverse Capital, LLC or its designated agents with any and all information in their possession regarding Merchant. Merchant hereby authorizes that a photocopy of this authorization be accepted with the same authority as the original.

Merchant understands that, if any adverse action is to be taken based upon the credit report, a copy of the report and a summary of Merchant's rights will be provided to Merchant.

Thank you,

Merchant Legal Name: DANIEL STEPHEN MARCH



By: DANIEL STEPHEN MARCH

Name: DANIEL STEPHEN MARCH

Title: OWNER

14

FILED: KINGS COUNTY CLERK 10/28/2021 07:30 AM
NYSCEF DOC. NO. 3

INDEX NO. 527528/2021
RECEIVED NYSCEF: 10/28/2021

Case 8:24-ap-01011-SC    Doc 1-19    Filed 01/26/24    Entered 01/26/24 15:19:53    Desc
Exhibit Exhibit S - First Diverse Agreement    Page 16 of 16

# DIVERSE CAPITAL

**\*\*\* PLEASE READ CAREFULLY \*\*\***

*The information below must be filled out completely*

Dear Merchant,

We are glad to welcome you to our unique financing program. The program will go into effect immediately after you return a signed agreement and will continue to be in effect until we receive the full Purchased Amount according to the agreement. After we receive the full agreement amount we will close off your account and deliver you a $0 balance letter for your future reference.

In order to assure the maintenance and servicing of your account please keep these service lines in your contacts for any service or maintenance request. Please note: due to a large amount of accounts and the difficulties of keeping track we sometime have accounting problems with the daily ACH debits. If you do have any debit that you think was incorrect you agree to contact us immediately to notify us about the incorrect debits:

**631-520-0020** or email us at **submit@diversecapitalllc.com**

\*We also **require** an active point of contact during the Term of the agreement. By providing your contact info below you agree to be contacted in regards to your account during the Term of the agreement. In case of an Emergency please list a secondary point of contact **(\*required)**:

_____
Please note all necessary information in regards to **reaching you or your staff**, in case of a problem:
_____
_____
_____

If we experienced any issues with your account and we cannot reach you or your point of contact, we will enforce all legal remedies available to us, under the Agreement. We are always available to assist you with any service request that you may need.

**Please make sure to call us if any problems come up.**

Contact Name;

Dan March
_____

Email;

_____

Phone;

_____

Cell Phone;

_____

15